# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SB IP HOLDINGS LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:20-CV-00886 |
| v. § | Judge Mazzant |
| § | |
| VIVINT, INC., § | |
| § | |
| *Defendant.* § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Non-Party Eyetalk 365's Motion for Protective Order (Dkt. #160). Having considered the motion, the response, and the relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

Plaintiff SB IP Holdings LLC ("SB IP") accuses Vivint, Inc. ("Vivint") of infringing U.S. Patent Nos. 9,432,638 (the "'638 Patent"); 9,485,478 (the "'478 Patent"); 9,516,284 (the "'284 Patent"); 9,635,323 (the "'323 Patent"); 9,648,290 (the "'290 Patent"); 9,414,030 (the "'030 Patent); and 10,674,120 (the "'120 Patent") (collectively, the "Patents-in-Suit"). Each of the Patents-in-Suit pertain to communication and video monitoring technology.

In response, Vivint asserts, among others, a defense of inequitable conduct (Dkt. #164 at p. 12). The heart of Vivint's inequitable conduct defense is its contention that SB IP misled the United States Patent and Trademark Office ("USPTO") on several occasions regarding the pendency of patent application 14/338,525 (the "'525 Application"). Specifically, Vivint alleges that Eyetalk 365 ("Eyetalk")—and later SB IP—misrepresented to the USPTO that the '525 Application was pending when, in fact, Eyetalk abandoned the '525 Application in October 2014.

Vivint contends that SB IP's misrepresentations regarding the '525 Application are critical to this case because the Patents-in-Suit rely upon the '525 Application to maintain their priority date. Indeed, as the Court has previously noted, the '525 Application is vital to each of the Patents-in-Suit: without a pending '525 Application, the priority chain of the Patents-in-Suit is defective.

## I.     Factual Background

### A.     The '525 Application

Each of the Patents-in-Suit belongs to a patent family that names Ronald Carter as the sole inventor (the "Cater Patent Family"). Revolutionary Concepts, Inc. ("REVO")—the previous license holder of the Carter Patent Family—utilized Tillman Wright, LLC ("Tillman") as its patent prosecution counsel during the relevant time period. As counsel to REVO, Tillman became familiar with the Carter Patent Family, which includes the '525 Application.

On February 10, 2014, REVO granted Eyetalk an exclusive license to the Carter Patent Family, which carried with it the right to prosecute the portfolio (Dkt. #160). Five months after Eyetalk acquired the Carter Patent Family, Tillman filed the '525 Application (Dkt. #167, Exhibit 3 at p. 7). Tillman did so without paying the required application fees or providing the USPTO with required documents, including an inventor's oath. In August 2014, the USPTO sent Tillman a Notice to File Missing Parts (the "2014 Notice") that set a two-month deadline to remedy the deficiencies in the '525 Application. Neither Tillman nor Eyetalk ever filed a timely response to the 2014 Notice or paid any of the required fees. Consequently, Eyetalk abandoned the '525 Application on October 7, 2014 (Dkt. #167, Exhibit 3 at p. 16).

In March 2015, Eyetalk retained Braxton Perrone, PLLC ("Braxton") as its new patent prosecution counsel. On March 26, 2015, Eyetalk filed patent application number 14/670,044 (the "'044 Application"), which claims priority through the '525 Application (Dkt. #167,

Exhibit 2 ¶ 11). In filing the '044 Application, Eyetalk represented to the USPTO that the '525 Application was co-pending. Eyetalk contends that it first learned that the '525 Application was abandoned when it received a notice of abandonment from the USPTO on April 7, 2015—after the filing of the '044 Application.

To be clear, it is undisputed that the '525 Application is an indispensable link in the priority chain of the Patents-in-Suit. Each of the Patents-in-Suit claim priority through the '044 Application, which, in turn, relies on the '525 Application for its priority date.

B.  **SB IP's Licensing History**

Beginning in 2017, Eyetalk asserted the Carter Patents in infringement actions and encountered invalidity challenges based on the abandonment of the '525 Application. *See, e.g.*, *Eyetalk365, LLC v. Zmodo Technology Corp. Ltd.*, No. 3:16-cv-00789 (W.D.N.C. Nov. 14, 2016) (Dkt. #19; Dkt. #21).[1] In one of those infringement actions, Eyetalk sued SkyBell Technologies, Inc. ("SkyBell"), SB IP's parent company, for infringing several of the Carter Patents, all of which claim priority through the '525 Application. *Eyetalk365, LLC v. SkyBell Techs., Inc.*, No. 3:16-cv-00702 (W.D.N.C. Oct. 3, 2016) (Dkt. #1). SkyBell responded by arguing that the asserted patents were invalid because the '525 Application had been abandoned. SkyBell eventually settled the dispute with Eyetalk by purchasing the right to license and/or own the Carter Patent Family (Dkt. #160 at p. 1). The agreement between SkyBell and Eyetalk provided SB IP with the rights to enforce and license the Carter Patent Family, but it also required the "cooperation of Eyetalk" and mandated that SkyBell pay Eyetalk an "operations fee" (Dkt. #160 at p. 5).

---

[1] The Court takes judicial notice of the docket entries and judicial documents publicly filed in other courts. *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327 (E.D. Tex. 2021) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.") (citing *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018)) (internal citations omitted); *see also* FED. R. EVID. 201.

### C. The ITC Investigation

In December 2020, Eyetalk, SB IP, and SkyBell brought an action before the International Trade Commission (the "ITC"), asserting that Vivint was infringing the Carter Patent Family (Dkt. #167, Exhibit 3). The ITC issued its Initial Determination on September 15, 2021, in which it concluded that the asserted patents were invalid because Eyetalk abandoned the '525 Application "no later than midnight on October 6, 2014" (Dkt. #167, Exhibit 3 at p. 16). Because it determined that the priority chain was broken, the ITC held that each of the patents asserted in the investigation—including three of the six Patents-in-Suit[2]—was anticipated by U.S. Patent No. 8,164,614 ("the '614 Patent"), which "disclose[d] every limitation of every claim asserted in the investigation" (Dkt. #167, Exhibit 3 at p. 19).

### D. Petitions for Revival

On November 24, 2021, aware of the defects in the Carter Patent Family priority chain, SB IP petitioned the USPTO to revive the '525 Application (Dkt. #167, Exhibit 1). USPTO rules required SB IP to submit facts sufficient to establish that the "delay in reply by applicant or patent owner was unintentional . . . ." 37 C.F.R. § 1.137(a). To satisfy this requirement, SB IP represented to the USPTO that Eyetalk's delay was relevant to the petition and stated that Eyetalk's failure to complete the prosecution of the '525 Application was the result of an unintentional delay. In so doing, SB IP relied heavily on a declaration submitted by Ross Helfer, Eyetalk's managing member,[3] in which Mr. Helfer repeatedly stated that Eyetalk relied on the advice of counsel in making decisions with respect to the '525 Application and the prosecution of the Carter Patent Family (Dkt. #167, Exhibit 2 ¶¶ 10–11).

---

[2] Specifically, the '478 Patent, the '638 Patent, and the '120 Patent.

[3] In addition to serving as Eyetalk's managing member, Mr. Helfer is employed by SkyBell as "an advisor regarding IP strategy" (Dkt. #167, Exhibit 6 ¶ 2).

Specifically, Mr. Helfer declared:

- "I was informed by counsel that the '525 Application would not go abandoned until April 6, 2015" (Dkt. #167, Exhibit 2 ¶ 10).

- "After consulting with counsel, Eyetalk determined the best path forward was to file a continuation of the '525 Application. On March 26, 2015, Eyetalk filed [the '044 Application] as a Track One application, believing that this continuation was appropriate because the '525 Application was still pending. Eyetalk never received any indication from the USPTO that the '525 Application was abandoned until the April 7, 2015, Notice of Abandonment, after the '044 Application was filed" (Dkt. #167, Exhibit 2 ¶ 11).

- "Each time an [allegation regarding the abandonment of the '525 Application] is made, Eyetalk, and subsequently SBIP, have reviewed the specific allegations in coordination with counsel and concluded that the '525 Application was not abandoned until April 6, 2015, at the earliest. Eyetalk maintains this belief and continues to view these allegations as a litigation tactic that lacks merit" (Dkt. #167, Exhibit 2 ¶ 14).

On March 4, 2022, the USPTO dismissed SB IP's petition for revival, explaining that Eyetalk had abandoned the '525 Application as of October 7, 2014 by failing to respond to the 2014 Notice (Dkt. #167, Exhibit 4) (the "Initial Determination"). In the Initial Determination, the USPTO noted three periods of delay: (1) the delay in filing a reply that originally resulted in the abandonment of the '525 Application; (2) the seven-year delay in filing the petition to revive the '525 Application; and (3) the delay in filing a grantable petition. The USPTO concluded that SB IP's petition had established that the second period of delay was unintentional but directed SB IP to file a renewed petition addressing the first and third periods.

SB IP filed its renewed petition on May 3, 2022, asserting again that Eyetalk relied on the advice of counsel in its decisions and assumptions regarding the '525 Application and the Carter Patent Family (Dkt. #167, Exhibit 5). With respect to the first period of delay, SB IP repeated its claim that it relied on the assertions from Eyetalk—which, in turn, relied on its counsel—in making decisions regarding the Carter Patent Family. Ultimately, SB IP represented to the USPTO that

5

"Eyetalk had the '044 Application filed on the advice of counsel and was informed by counsel that the '525 Application was still pending at the time '044 Application was filed, thus maintaining the priority chain, and would remain pending until April 6, 2015" (Dkt. #167, Exhibit 5 at p. 5).

In support of its renewed petition, SB IP filed an additional declaration from Mr. Helfer, in which he again stated that Eyetalk "relied heavily" on counsel in making decisions related to the '525 Application (Dkt. #167, Exhibit 6 ¶ 14). In particular, Mr. Helfer declared:

- "Form [sic] the time Eyetalk obtained the right to prosecute the patent portfolio until November 2014, Eyetalk believed Tillman Wright was prosecuting the '100 Application. However, . . . on or around November 17, 2014, Eyetalk learned that the '100 Application had gone abandoned. While initially very concerning, Eyetalk was told that the '100 Application had gone abandoned in favor of the '525 Application. Believing this kept the priority chain [intact], Eyetalk's immediate concerns were alleviated" (Dkt. 167, Exhibit 6 ¶ 9).

- "In March 2015, when [Eyetalk] retained Braxton Perrone, PLLC ("Braxton Perrone") to assist with continued prosecution, Eyetalk was advised that the best course of action was to file another continuing application while the '525 Application was pending in order to maintain the priority chain and continue prosecution. Eyetalk was told that the '525 Application would not go abandoned until April 6, 2015, and that the filing of [the '044 Application] on March 26, 2015, preserved the priority chain. . . . Eyetalk followed this advice and filed the '044 Application on March 26, 2015, before the April 6, 2015, deadline on which Eyetalk understood the '525 Application would become abandoned" (Dkt. #167, Exhibit 6 ¶ 14).

- "Of note, I am not an attorney. In 2014 and 2015, Eyetalk was very new to the patent prosecution process, and while [Eyetalk] understood the general concept of a priority chain, Eyetalk was unfamiliar with the nuances of patent prosecution and relied heavily (and continues to rely heavily) on counsel. Eyetalk was not aware of what fees, if any, should have been paid when the '525 Application was filed nor was it aware that those fees had not been paid . . . ." (Dkt. #167, Exhibit 6, ¶ 15).

Accepting this explanation, the USPTO approved the petition to revive the '525 Application.

6

## II.     Procedural History

On November 17, 2020, SB IP, brought the current suit for patent infringement against Vivint.  On January 13, 2022, SB IP produced a privilege log pertaining to communications about SB IP's initial petition to revive the '525 Application.  The logs indicate that Eyetalk may have intentionally abandoned the '525 Application and that SB IP and SkyBell may have been aware of this abandonment as early as 2017.  Vivint contends that SB IP knew that Eyetalk intentionally abandoned the '525 Application and, therefore, made false representations to the USPTO in its petitions to revive the '525 Application.

For this reason, Vivint requested that SB IP produce all communications reflecting any information that SB IP and SkyBell received concerning the continuity of the Carter Patent Family applications, the 2014 Notice, any potential deadlines, and the effect the applicant's conduct would have had if it took or failed to act with respect to the 2014 Notice.  In response, SB IP sought to withhold the requested communications on privilege and relevance grounds.

With the Court's permission, Vivint moved to compel the requested communications on June 21, 2022 (Dkt. #127).  The Court granted Vivint's Motion to Compel on August 18, 2022 (Dkt. #146).  In granting Vivint's Motion, the Court noted that "[a]t bottom, [Vivint] only needs access to communications that can answer two questions: (1) whether Eyetalk intentionally abandoned the '525 Application; and (2) whether SB IP knew Eyetalk intentionally abandoned the '525 Application" (Dkt. #146 at p. 6).  Because "[t]he answers to these questions are most likely within the communications between Eyetalk and Tillman; Eyetalk and Braxton; and Eyetalk and SkyBell/SB IP," the Court rejected SB IP's privilege and relevance arguments and ordered SB IP to produce the requested communications.[4]

---

[4] Specifically, the Court ordered SB IP to produce the following:

On June 27, 2022, Vivint served a subpoena on Eyetalk. In general, Vivint's subpoena sought communications and documents related to the abandonment of the '525 Application (Dkt. #160, Exhibit A).[1] Eyetalk objected to these requests on privilege and relevance grounds and, following a hearing, sought a protective order from the Court on September 12, 2022 (Dkt. #160). On September 16, 2022, Vivint filed a response (Dkt. #167). On September 20, 2022, Eyetalk filed a reply (Dkt. #172). On September 21, 2022, Vivint filed a sur-reply (Dkt. #174).

## LEGAL STANDARD

### A. Applicable Law

The Federal Circuit applies the law of the circuit in which a district court sits with respect to "nonpatent issues" and applies the law of the Federal Circuit to "issues of substantive patent law." *See, e.g.*, *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). Typically, discovery disputes are treated as "nonpatent issues" governed by the law of the circuit in which the district court sits. *In re Regents of Univ. of California*, 101 F.3d 1386, 1390 n. 2 (Fed. Cir. 1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."). But "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006) (quoting *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001)). Inequitable conduct is a matter of substantive patent law. *Brigham and*

---

1. Communications involving the '525 Application and SB IP's knowledge of the application including all communications retained by SB IP/Skybell reflecting any advice Eyetalk365 received concerning the continuity of the patent applications, the 2014 Notice, any potential deadlines, the effect the Applicant's conduct would have if it took or failed to take action with respect to the August 2014 Notice, and all other communications regarding the '525 Application.

2. Communications involving negotiations toward purchasing or licensing the Asserted Patents including negotiations between SB IP/Skybell and Eyetalk365.

8

*Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, 707 F. Supp. 2d 463, 469 (D. Del. 2010). And the issue of the waiver of privilege as it pertains to the advice of counsel and a claim of inequitable conduct is "closely related to the substantive issue of inequitable conduct and, as such, also implicates substantive patent law." *eTool Devs., Inc. v. Nat'l Semiconductor Corp.*, No. 2:08-CV-196, 2011 WL 13217656, at *2 (E.D. Tex. Nov. 29, 2011). For this reason, the Court will apply the law of the Federal Circuit. *Id.*

### B. Federal Rule of Civil Procedure 26

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The Local Rules of the Eastern District of Texas provide that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." Local Rule CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 83 (E.D. Tex. 2019) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Federal Rule of Civil Procedure 26(c) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden is on the movant to establish that a protective order is necessary, which requires a "specific demonstration of fact rather than mere conclusory statements." *See, e.g.*, *Caraway v. Chesapeake Expl. LLC*, 269 F.R.D. 627, 628 (E.D. Tex. 2010) (internal quotation marks and citation omitted). Therefore, a protective order is warranted in those

instances in which the movant demonstrates good cause and a specific need for protection. *See, e.g.*, *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). The Court has broad discretion in determining whether to grant a motion for protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## ANALYSIS

Eyetalk seeks to protect communications that are responsive to Vivint's subpoena based on the and attorney-client, work-product, and common interest privileges (Dkt. #160).[5] SB IP and SkyBell seek to join Eyetalk's Motion for Protective Order, asserting privilege over communications related to the time period from December 13, 2019, to present. In response, Vivint argues that Eyetalk has failed to properly assert privilege, that Eyetalk, SB IP, and SkyBell (collectively, the "Movants") waived any privilege over communications concerning the '525 Application when they relied on advice of counsel in SB IP's petitions to revive, and that the crime-fraud exception applies (Dkt. #166). The Court begins with the issue of waiver.

**I.   Waiver**

"The attorney-client privilege belongs to the client, who alone may waive it." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). One form of waiver occurs when a client

---

[5] In their reply, Movants also question the relevance of the requested communications and equate Vivint's inequitable conduct defense to a non-cognizable "improper revival" defense (Dkt. #172 at pp. 1–2). SB IP raised the same relevance argument in response to Vivint's motion to compel (Dkt. #135). Because the Court implicitly rejected this argument when it granted Vivint's motion to compel, it will not reconsider the same relevance argument here. Likewise, Movants also refer to Vivint's requests as unduly burdensome but make no attempt to establish the nature of the burden (Dkt. #160). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017). Without support, the Court rejects Movants' objection as "nothing more than unsustainable boilerplate." *Id.*

"attempts to use the privilege both as a shield and a sword by partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny." *See, e.g.*, *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 3583620, at *6 (E.D. Tex. May 9, 2016) (internal quotations omitted). Similarly, a client may also waive the work-product and common interest privileges by disclosing the advice of counsel. *Autobytel, Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569, 572 (E.D. Tex. 2006).

Vivint contends that Movants waived any privilege over communications concerning the '525 Application because they placed those communications at issue in their petitions before the USPTO (Dkt. #166). In response, Movants dispute that any waiver occurred and argue that, even if the Court finds that waiver did occur, its scope is limited to the facts put into the record before the USPTO rather than a full waiver of all relevant subject matter.

### A.     Advice of Counsel Waiver

Once a party discloses the advice of counsel, any privilege over that advice is waived. *EchoStar*, 448 F.3d at 1298. This issue typically arises when accused infringers assert an advice of counsel defense to avoid liability for willful infringement. *See, e.g.*, *Sunoco Partners Mktg. & Terminals, LP v. U.S. Venture, Inc.*, No. 4:19-CV-1145, 2021 WL 4242368, at *3 (S.D. Tex. Jan. 15, 2021) (citing *EchoStar*, 448 F.3d at 1298).

That said, waiver based on the disclosure of advice of counsel is in no way limited to the willful infringement context. Indeed, waiver also occurs when a party discloses the contents of an attorney-client communication to the USPTO for "strategic purposes." *In re VISX, Inc.*, 18 F. App'x 821, 824 (Fed. Cir. 2001). The rationale underlying this type of waiver is simple: A party cannot use privileged information as a sword before the USPTO—that is, as a means of obtaining an enforceable patent—and then attempt to use the same privileged information as a shield in

subsequent litigation. *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1376 (Fed. Cir. 2001); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006). Both *Winbond* and *Board of Trustees* are illustrative of this point.

In *Winbond,* a patentee sought to enforce three patents against a group of companies who were allegedly importing and selling infringing products in the United States. 262 F.3d at 1368. During the infringement proceedings, the ITC determined that the patents were unenforceable because they failed to list all inventors. *Id.* In response to the ITC's decision, the patentee petitioned the USPTO to correct inventorship of the patents. *Id.* at 1368–69. To obtain the certificate of correction, the patentee relied heavily on the additional inventor's declaration, which contained the advice of counsel that he received regarding inventorship. *Id.* at 1375. The patentee then used the certificate of correction to convince the ITC to reconsider the enforceability of the patents in the context of a renewed infringement prosecution. *Id.* at 1369. The alleged infringers defended the action, in part, on the grounds that the patents were invalid due to incorrect inventorship and/or inequitable conduct committed during their prosecution. *Id.* at 1370. When the alleged infringers sought to discover other attorney-client communications related to inventorship, the ITC found that "[the patentee] placed at issue the advice of counsel by its affirmative act of petitioning the [ITC] for reconsideration of the inventorship issue based on a certificate of correction of the [patent] issued by the [USPTO]." *Id.* at 1369. Thus, the ITC concluded that the patentee "waived its attorney-client privilege and work product protections for all documents concerning the [patent's] inventors." *Id.* The Federal Circuit affirmed, holding that the ITC "correctly found" that privilege was waived because the patentee placed at issue his and his attorney's understanding of inventorship. *Id.* at 1376.

12

Likewise, in *Board of Trustees,* a patentee initially omitted the names of two original co-inventors in a patent application.  237 F.R.D. at 620.  When the patentee sought to correct the error to avoid claims of patent invalidity, it submitted evidence (as required by USPTO rules) to demonstrate that the omission was through error rather than deceptive intent.  *Id.*  Specifically, the patentee submitted several declarations intended to demonstrate its good-faith reliance on legal advice regarding inventorship.  *Id.* at 620–21.  Each of these declarations contained the contents of attorney-client communications.  *Id.*  After obtaining a certificate of correction, the patentee sought to enforce the patents against an alleged infringer.  *Id.* at 620.  The alleged infringer sought discovery of other attorney-client communications related to inventorship to support its defense that the patentee failed to disclose the collaboration between the patentee and the alleged infringer and the alleged infringer's inventive contributions to the subject matter of the patents-in-suit.  *Id.* at 621.  The trial court agreed with the alleged infringer, finding that the patentee "disclosed the contents of privileged attorney-client communications and work-product protection to the [USPTO] to successfully obtain ownership of the contested patents and cannot now attempt to shield all other communications on the same subject . . . ."  *Id.* at 625.

Vivint contends that, like the patentees in *Winbond* and *Board of Trustees*, SB IP and Eyetealk "waived privilege by using advice of counsel as a sword to revive the '525 Application" (Dkt. #166 at p. 11).  As Vivint points out, in an attempt to establish that any delay in filing a grantable application was unintentional, SB IP relied heavily on two declarations made by Ross Helfer on behalf of SB IP and Eyetalk.  In those declarations, Mr. Helfer explained that counsel informed him that the '525 Application would not go abandoned until April 2015 and "that the best course of action was to file another continuing application while the '525 Application was pending in order to maintain the priority chain and continue prosecution" (Dkt. #167, Exhibit 2 ¶¶

10–11). Mr. Helfer went on to explain that, in subsequent litigation, Eyetalk reviewed allegations that the '525 Application was abandoned "in coordination with counsel and concluded that the application was not abandoned until April 6, 2015" (Dkt. #167, Exhibit 2 ¶ 14).

In response, Movants dispute that any opinions of counsel were disclosed to the USPTO. Rather, they characterize Mr. Helfer's statements as nothing more than a factual recitation of his understanding (Dkt. #160 at p. 14–15).

But this characterization is untenable. Mr. Helfer's statements go beyond mere facts—they explicitly refer to the contents of attorney-client communications regarding the "best path forward" for the continued prosecution of the Carter Patents (Dkt. #167, Exhibit 2 ¶ 10). They also implicate the specific advice that Eyetalk received in the face of invalidity challenges based on the abandonment of the '525 Application (Dkt. #167, Exhibit 2 ¶ 14). And, perhaps most importantly, they provide SB IP with its entire basis for arguing that any delay in reviving the '525 Application was unintentional on Eyetalk's part.

Simply put, Mr. Helfer's references to the advice of counsel do not just relate the fact that Eyetalk believed that the '525 Application was co-pending with the '044 Application. Rather, they explain Eyetalk's purported basis for holding that belief. The advice disclosed in Mr. Helfer's declarations was at the heart of SB IP's petitions to revive the '525 Application because it forms the basis of SB IP's argument that any delay on Eyetalk's part was the result of its good-faith reliance on the advice of counsel, rather than an intentional abandonment. Accordingly, the Court finds that Eyetalk and SB IP did, in fact, disclose the advice and opinions of counsel in SB IP's petitions to the USPTO.

More specifically, the Court finds that Eyetalk and SB IP disclosed the contents of attorney-client communications to the USPTO for the "strategic purpose" of reviving the '525 Application

14

and preserving the priority chain of the Patents-in-Suit. *In re VISX*, 18 F. App'x at 824. Like the patentees in *Winbond* and *Board of Trustees*, SB IP and Eyetalk made affirmative representations before the USPTO that placed at issue the advice that Eyetalk received concerning the '525 Application. Consequently, they "cannot now attempt to shield all other communications on the same subject matter." *Bd. of Trustees of Leland Stanford Junior Univ.*, 237 F.R.D. at 625.

### B. Scope of Waiver

Having determined that Movants have waived privilege over communications related to the '525 Application, the Court turns next to the scope of the waiver.

Movants argue that only the opinions disclosed to the USPTO are waived, and that there is no subject matter waiver (Dkt. #172 at p. 4). Conversely, Vivint argues that Movants have waived privilege over all communications relating to the '525 Application (Dkt. #166 at p. 12).

Generally, when a party waives privilege as to a particular communication, the waiver applies to all other communications relating to the same subject matter. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.* Rather than applying a bright line test for determining what constitutes the subject matter of a waiver, "courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 1349–50.

In determining the scope of privilege waiver and associated discovery in the context of advice of counsel, the Court must analyze attorney-client privilege, the work-product doctrine, and

15

the common interest privilege separately because waiver of one does not necessarily waive the others. *See EchoStar*, 448 F.3d at 1300.

### 1. Attorney-Client Privilege

When a party discloses an attorney-client communication, it "waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.* at 1301.

Here, SB IP and Eyetalk disclosed the advice of counsel pertaining to the pendency of the '525 Application both before and after the filing of the '044 Application and Eyetalk's receipt of the notice of abandonment. In so doing, they necessarily placed "at issue" all communications regarding the '525 Application. *Winbond*, F.3d at 1375. Accordingly, under the Federal Circuit's definition of attorney-client privilege waiver, waiver extends to all communications relating to the same subject matter—that is, all communications relating to the '525 Application. *Id.*; *see also Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 3475577, at *2 (E.D. Tex. Aug. 11, 2017) (noting that "the Federal Circuit's broad definition of attorney-client privilege waiver includes all subject matter" discussed in a disclosed attorney-client communication).

Ultimately, Eyetalk selectively disclosed attorney-client communications as a "sword" before the USPTO, and it cannot now assert attorney-client privilege as a shield. *Echostar*, 448 F.3d at 1301. And so, to prevent this type of improper sword-and-shield tactics, the Court holds that Eyetalk waived attorney-client privilege as to all communications regarding the '525 Application. *Id.*

### 2. Work-Product Protection

Likewise, a party may waive work-product protection by selectively disclosing the protected material. *Id.* at 1301–02. That said, work-product waiver is narrower than attorney-

client privilege waiver. *Tech Pharmacy Servs.*, 2017 WL 3475577 at *3. "Instead, work-product waiver only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product." *Echostar*, 448 F.3d at 1302 (internal quotations omitted). The line between factual work product and opinion work product is often blurred, "especially when an attorney's opinion may itself be factual work. *Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.*, No. 6:19-CV-00059, 2020 WL 6803252, at *4 (E.D. Tex. Apr. 28, 2020). Ultimately, the Court must "balance the policies that prevent sword-and-shield litigation tactics with the policy to protect work product." *Id.*

To this end, the Federal Circuit has recognized three categories of work product that are implicated in the context of advice-of-counsel waiver:

> (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

*Echostar*, 448 F.3d at 1302. A party that places the advice of counsel at issue typically waives any privilege over work product in the first and third categories relating to the same subject matter. *Id.* But, because work-product waiver extends "only so far as to inform the court of the [party's] state of mind," work product that is never communicated to the client, is not discoverable. *Id.* at 1303.

And so, work product that was never communicated to Eyetalk or SB IP is not discoverable. *Id.* at 1303. This distinction typically arises in the context of willful infringement, where "[t]he facts of consequence . . . relate to the infringer's state of mind." *See, e.g.*, *Thorn Emi N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 622 (D. Del. 1993). In that context, courts have noted that "counsel's mental impressions, conclusions, opinions or legal theories are not probative of

that state of mind unless they have been communicated to that client." *Id.* The same reasoning applies here.

As the Court has previously recognized, the facts of consequence here are those that can answer two questions: "(1) whether Eyetalk intentionally abandoned the '525 Application; and (2) whether SB IP knew Eyetalk intentionally abandoned the '525 Application" (Dkt. #146 at p. 6). SB IP and Eyetalk waived any work-product privilege over any "document or opinion" that can answer these questions when they placed at issue the advice that Eyetalk received from counsel. *Echostar*, 448 F.3d at 1304. But counsel's mental impressions, conclusions, opinions, or legal theories that were not communicated to Eyetalk or SB IP do not answer these questions. *Thorn*, 837 F. Supp. at 622. Accordingly, such work product is not discoverable here. *Echostar*, 448 F.3d at 1303.

In sum, to prevent sword-and-shield litigation tactics, Vivint must be allowed to probe what Eyetalk (and later SB IP) knew about the '525 Application and its abandonment, including advice and work product received from counsel. *Id.* at 1302.

### 3. Common Interest Privilege

Finally, when a party discloses the advice of counsel, it waives common interest privilege "as to communications or communicated work product related to [the subject matter of the disclosure]." *Autobytel*, 455 F. Supp. 2d at 576.

Movants contend that Eyetalk shared a common interest with REVO beginning in February 2014 and a common interest with SB IP and SkyBell beginning in December 2019 (Dkt. #160). Even if those entities shared a common interest, Eyetalk and SB IP waived any privilege as it relates to the '525 Application by placing the advice of counsel at issue before the USPTO. *Mobile*

18

*Micromedia Sols. LLC v. Nissan N. Am., Inc.*, No. 5:05-CV-230, 2007 WL 9724766 at *5 (E.D. Tex. Nov. 14, 2007) (citing *Autobytel*, 455 F. Supp. 2d at 576).

The Court therefore holds that Eyetalk and SB IP have waived any attorney-client and common interest privilege over communications regarding the '525 Application, and that they have waived work-product privilege over documents or communications reflecting a communication between Eyetalk or SB IP and counsel regarding the '525 Application.[6]

## II. Failure to Provide Adequate Privilege Log

Vivint also argues that Eyetalk has failed to adequately assert any claims of privilege or to provide an adequate privilege log (Dkt. #166 at pp. 7–8). As Vivint has noted, it appears that Eyetalk "participated in and approved of" the privilege log prepared by SB IP in the ITC litigation and served in this case (Dkt. #166, Exhibit 9). It is not, however, clear that Eyetalk has provided a privilege log in response to Vivint's subpoena.

The Court believes that this Order may alleviate the parties' disagreement, at least to the extent that it clarifies the theory under which documents can or cannot be shielded by privilege and requires further production of documents. If any documents remain in dispute, Eyetalk may prepare and serve a privilege log and submit disputed documents for *in camera* review.

## CONCLUSION

It is therefore **ORDERED** that Non-Party Eyetalk 365's Motion for Protective Order (Dkt. #160) is hereby **DENIED**.

It is **FURTHER ORDERED** that Movants' privilege assertions are overruled, that Eyetalk and SB IP have waived any attorney-client and common interest privilege over communications

---

[6] Because the Court holds that Eyetalk and SB IP have waived privilege over communications related to the '525 Application, it need not consider Vivint's argument that the crime-fraud exception applies in this case, and it expresses no opinion on that argument.

regarding the '525 Application, and that they have waived work-product privilege over documents or communications reflecting a communication between Eyetalk or SB IP and counsel regarding the '525 Application.

    **IT IS SO ORDERED**.

    **SIGNED this 14th day of November, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE