# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SB IP HOLDINGS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:20-CV-00886 |
| v. | § | Judge Mazzant |
| | § | |
| VIVINT, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Plaintiff's Motion for Clarification on Privilege Waiver (Dkt. #191) and Defendant's Second Motion to Continue Certain Deadlines in the Scheduling Order (Dkt. #203).  Having considered the motions and the relevant pleadings, the Court finds that Plaintiff's Motion for Clarification on Privilege Waiver (Dkt. #191), which perhaps would be better labeled as a motion for reconsideration, should be **DENIED in part** and **GRANTED in part**.[1]

## BACKGROUND

This is the third time that the parties have sought the Court's intervention in a dispute concerning the discovery of documents and communications related to U.S. patent application 14/338,525 (the "'525 Application").  A detailed factual and procedural overview of this case can be found in the Court's prior orders (Dkt. #146; Dkt. #185).  That said, a summary of the Court's previous rulings regarding the '525 Application is necessary.

---

[1] The Court also finds that Defendant's Second Motion to Continue Certain Deadlines in the Scheduling Order (Dkt. #203) should be **GRANTED in part.**  The Court will issue a separate order continuing certain dates and amending the scheduling order.

On June 21, 2022, with the Court's permission, Vivint moved to compel SB IP to produce documents related to the '525 Application, including, but not limited to, documents and communications that relate to the initial abandonment of the '525 Application and its subsequent revival by the U.S. Patent and Trademark Office ("USPTO") (Dkt. #128).  On August 18, 2022, the Court granted Vivint's motion to compel (Dkt. #146).  The Court specifically compelled SB IP to produce "[c]ommunications involving the '525 Application and SB IP's knowledge of the application including all communications retained by SB IP/Skybell reflecting any advice Eyetalk365 received concerning the continuity of the patent applications, the 2014 Notice, any potential deadlines, the effect the Applicant's conduct would have if it took or failed to take action with respect to the August 2014 Notice, and all other communications regarding the '525 Application" (Dkt. #146 at p. 9).

In the wake of the Court's August 18, 2022 Order, SB IP and Eyetalk365 ("Eyetalk") represented to the Court that SB IP did not have any documents that were responsive to Vivint's request, and that the documents at issue were actually held by Eyetalk, which is not a party to this case (Dkt. #161 at p. 4).  Vivint served a subpoena on Eyetalk seeking documents and communications related to the abandonment of the '525 Application (Dkt. #160, Exhibit A).

In response to that subpoena, Eyetalk filed a motion for protective order, which was joined by SB IP and non-party Skybell[2] (collectively, the "Movants") (Dkt. #160).  In this motion, Movants argued that Vivint's subpoena sought documents related to the '525 Application that were protected by the attorney-client, work-product, and common interest privileges, that the communications at issue were not relevant, and that the subpoena was overly burdensome (Dkt. #160).  The Court denied Movants' motion for protective order in its entirety

---

[2] SB IP is a licensing and patent assertion entity that is wholly owned by Skybell (Dkt. #160).

on November 14, 2022 (Dkt. #185).  In rejecting Movants' privilege claims, the Court held that Movants waived privilege when they disclosed the contents of attorney-client communications to the USPTO in an attempt to revive the '525 Application and preserve the priority chain of the Patents-in-Suit (Dkt. #185 at pp. 14–15).  The Court specifically noted that, in seeking to revive the '525 Application, Movants relied heavily on legal advice provided to Ross Helfer, Eyetalk's managing member, relating to the abandonment and pendency of the '525 Application (Dkt. #185 at 13–15).  Given this strategic disclosure before the USPTO, the Court concluded that Movants placed the legal advice "at issue" and that Vivint is entitled to "probe" Movants' knowledge of the '525 Application and its abandonment, including "advice and work product received from counsel" (Dkt. #185 at p. 18).

With respect to the temporal scope of Movants' waiver of privilege, the Court's November 14, 2022 Order noted that Mr. Helfer's disclosure of attorney-client communications formed the basis of Movants' explanation for each of three periods identified by the USPTO in its initial dismissal of SB IP's petition for revival (Dkt. #185 at 14).  Effectively, the Court recognized that Movants had "necessarily placed 'at issue' all communications regarding the '525 Application" in the period spanning from the initial notice of missing parts in August 2014 through (at least) the filing of SB IP's renewed petition for revival in May 2022 (Dkt. #185 at p. 16).

The Court also explicitly defined the substantive scope of Movants' waiver—holding that Movants "explicitly waived any attorney-client and common interest privilege over communications regarding the '525 Application, and that they have waived work-product privilege over documents or communications reflecting a communication between Eyetalk or SB IP and counsel regarding the '525 Application" (Dkt. #185 at p. 19).  In defining the scope of Movants' waiver, the Court acknowledged the unique nature of opinion work product, and stated that

counsel's mental impressions, conclusions, and opinions or legal theories that were not communicated to a client are not discoverable here (Dkt. #185 at pp. 17–18).

On December 13, 2022, SB IP moved to clarify the scope of the materials implicated by the Court's November 14, 2022 Order (Dkt. #191). Vivint filed its response on December 27, 2022 (Dkt. #194). SB IP replied on January 3, 2023 (Dkt. #196). On January 10, 2023, Vivint filed its sur-reply (Dkt. #199). SB IP has also submitted thirty-five documents to the Court for *in camera* review.

## ANALYSIS

### I.  SB IP's Motion for Clarification

In its motion for clarification, SB IP raises two primary arguments. First, SB IP argues that, as a "gating issue," Vivint must establish that Eyetalk made an intentional decision to abandon the '525 Application before it can seek discovery into SB IP's knowledge of Eyetalk's decision (Dkt. #191 at p. 11). Second, SB IP argues that none of counsel's opinion work product should be discoverable in this case because Defendant's inequitable conduct allegations turn only on the mental impressions of Mr. Helfer, not SB IP's counsel (Dkt. #191 at p. 13).

As a threshold matter, although it is styled as a motion for clarification, the Court views SB IP's motion as something closer to a motion for reconsideration. After all, SB IP admits that its arguments concern "new evidence" that it was previously unable to discuss due to privilege concerns (Dkt. #196 at p. 2). Of course, the availability of new evidence is a ground for a motion for reconsideration. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002) (noting that the grounds for a motion for reconsideration include: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error

4

of law or prevent manifest injustice.).  But the Court concludes that there is no reason grant a motion for reconsideration here.

As to SB IP's first argument, the Court rejects the notion that Vivint must first prove that Eyetalk abandoned the '525 Application before it can seek additional discovery.  In making this argument, SB IP relies on contemporaneous documents and communications, which, according to SB IP, "objectively demonstrate that Eyetalk never intended for the '525 Application to be abandoned prior to April 6, 2015" (Dkt. #191 at p. 15).  In effect, SB IP argues that the documents sought by Vivint are not discoverable because SB IP believes that it will ultimately prevail on the merits of Vivint's inequitable conduct claim by establishing that Eyetalk never intentionally abandoned the '525 Application.  But, even if it is true that SB IP may ultimately prove that Eyetalk never intentionally abandoned the '525 Application, "a party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail." *Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014). Ultimately, Vivint's claim of inequitable conduct turns on its allegations that Eyetalk knew that the '525 Application was abandoned on October 7, 2014 *and* that SB IP falsely represented to the USPTO that the "entire delay period was unintentional" in its petition to revive the '525 Application (Dkt. #164 ¶¶ 106–110; 129–153).  And, in responding to SB IP's motion for clarification, Vivint points to factual support for these allegations (Dkt. #195, Exhibit 4; Exhibit 5). But it is unnecessary for the Court to weigh these competing facts at this stage of the case.  Rather, it is sufficient for the Court to re-affirm its prior determination that Vivint is entitled to probe its allegations of inequitable conduct, which includes discovery into attorney-client communications regarding the '525 Application (Dkt. #185 at p. 18).

Likewise, SB IP's concerns regarding opinion work product do not constitute grounds for

reconsideration.  In fact, the Court's November 14, 2022 Order explicitly addressed the crucial

distinction between ordinary work product and opinion work product (Dkt. #185 at pp. 17–18).

To be sure, it is axiomatic that opinion work product is afforded an almost absolute protection

from discovery.  *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

It is for this reason that even in cases like this one, where a party waives its attorney-client and

work-product privilege, courts recognize that the work-product waiver must be narrowly construed

to avoid unnecessarily implicating counsel's mental impressions.  *Tech Pharmacy Servs., LLC v.*

*Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 3475577, at *2 (E.D. Tex. Aug. 11, 2017).  As noted

in the Court's November 14, 2022 Order, the Federal Circuit has recognized three categories of

work product that are implicated in the context of advice-of-counsel waiver:

> (1) documents that embody a communication between the attorney and client
> concerning the subject matter of the case, such as a traditional opinion letter;
> (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the
> attorney's mental impressions but were not given to the client; and (3) documents
> that discuss a communication between attorney and client concerning the subject
> matter of the case but are not themselves communications to or from the client.

(Dkt. #185 at p. 17) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302

(Fed. Cir. 2006)).  In *EchoStar*, the Federal Circuit made clear that work-product waiver should

extend "only so far as to inform the court of the [party's] state of mind," and held that only

documents in the first and third categories are implicated by advice-of-counsel waiver. 448 F.3d

at 1303.  After all, by implicating the advice of counsel, a party does not "give their opponent

unfettered discretion to rummage through all their files and pillage all of their litigation strategies."

*Id.* at 1303.  With this in mind, the Court limited the scope of Movants' waiver to work product in

the first and third *EchoStar* categories (Dkt. #185 at pp. 17–18).  Given the nature of Vivint's

inequitable conduct claims, Movants' work-product waiver extends only to work product that is

probative of Mr. Helfer's state of mind at the time that he offered his declarations to the USPTO in support of SB IP's petition to revive the '525 Application (Dkt. #185 at p. 17).  This necessarily includes opinion work product that was communicated to Mr. Helfer at the time that the '525 Application was purportedly abandoned, in the interim period between abandonment and revival, or during the revival process.  But, as the Court has previously made clear, counsel's opinion work product that was not communicated to SB IP or Eyetalk is not discoverable because it is not probative of any speaker's state of mind (Dkt. #185 at p. 7).

Thus, to the extent that SB IP's motion seeks reconsideration of the Court's prior orders, that reconsideration is denied.

The Court does, however, offer two points of clarification.  First, the Court's November 14, 2022 Order overruled privilege assertions made by all three Movants and, as a result, it extends with equal force to SB IP, Skybell, and Eyetalk (Dkt. #185 at pp. 19–20).  Put differently, the Court has explicitly found that Eyetalk, SB IP, and Skybell have waived any attorney-client privilege over communications regarding the "'525 Application," and that they have waived work-product privilege over documents or communications reflecting a communication between any of the Movants and counsel regarding the '525 Application (Dkt. #185 at p. 19).  Moreover, as Vivint notes, the Court's August 18, 2022 Order directed SB IP to produce SB IP/Skybell communications regarding the '525 Application and that order remains in effect (Dkt. #146 at p. 9).

Second, the relevant time period for the Movants' waiver extends no later than the date on which the USPTO granted SB IP's second petition to revive the '525 Application.  In determining the scope of an advice-of-counsel waiver stemming from a declaration submitted to the USPTO in support of a reissue application, at least one court in this district has reasoned that "the privileged

communications remained at issue at least until the [USPTO] issued the patent . . . ." *Mass Engineered Design, Inc. v. Ergotron, Inc.*, No. 2:06-CV-00272, 2008 WL 744705, at *2 (E.D. Tex. Mar. 19, 2008).  The same logic applies here.  Accordingly, the proper temporal scope of Movants' waiver as defined in the Court's November 14, 2022 Order covers the period up to and including the date on which the USPTO granted SB IP's petition to revive the '525 Application.  *See id.*; *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 627 (N.D. Cal. 2006) (holding that plaintiff's waiver of privilege in connection with petition to correct inventorship extended at least until the USPTO accepted the petition).

## II.   Documents Reviewed *In Camera*

Finally, in addition to its motion for clarification, SB IP has submitted thirty-five documents for *in camera* review (Dkt. #206 at p. 8).  SB IP has represented to the Court that these thirty-five documents represent "[t]he entirety of the documents in dispute on this privilege issue" (Dkt. #206 at pp. 7–8).  Having reviewed each of these documents, the Court determines that they are relevant to Vivint's claim for inequitable conduct, that they are subject to Movants' waiver of the attorney-client, work-product, and common interest privileges as defined in the Court's November 14, 2022 Order (Dkt. #185), and that they fall within the temporal scope of Movants' waiver as defined by this Order.  Accordingly, the Court orders SB IP to produce all thirty-five documents without redaction no later than seven days from the date of this Order.

## CONCLUSION

All other relief sought in Plaintiff's Motion for Clarification on Privilege Waiver (Dkt. #191) is hereby **DENIED**.

It is further the **ORDERED** that SB IP produce all items in accordance with this Order no later than seven (7) days from the date of this Order.

**IT IS SO ORDERED**.

 **SIGNED this 13th day of February, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE