# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SB IP HOLDINGS LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:20-CV-00886 |
| v. § | Judge Mazzant |
| § | |
| VIVINT, INC., § | |
| § | |
| *Defendant.* § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Exclude Robert Stoll's Testimony (Dkt. #270). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

This is a patent infringement action. Plaintiff SB IP Holdings LLC ("SB IP") accuses Vivint, Inc. ("Vivint") of infringing U.S. Patent Nos. 9,485,478 ("the '478 patent"), 9,635,323 ("the '323 patent"), and 10,674,120 ("the '120 patent") (collectively, the "Patents-in-Suit").

Central to Vivint's defense is its contention that SB IP and non-party Eyetalk 365 ("Eyetalk") committed inequitable conduct by making false statements to the United States Patent and Trademark Office (the "USPTO") in connection with SB IP's efforts to revive patent application 14/338,525 ("the '525 Application") (Dkt. #164 at p. 28; Dkt. #231 at p. 6). In support of this defense, Vivint retained Mr. Robert Stoll ("Stoll"), a former Commissioner for Patents at the USPTO, to provide expert testimony regarding USPTO practices and procedures and their application here (Dkt. #270, Exhibit 1 at p. 6). Namely, Stoll purports to provide testimony regarding the materiality of the alleged misrepresentations made to the USPTO and the impact that

those misrepresentations had on the USPTO's decision to revive the '525 Application (Dkt. #270, Exhibit 1 at p. 6).

SB IP moved to exclude Stoll's testimony on April 10, 2023 (Dkt. #270). Vivint responded on April 24, 2023 (Dkt. #306). SB IP filed its reply on April 28, 2023 (Dkt. #324), and Vivint filed its sur-reply one week later (Dkt. #349).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

The admissibility of expert testimony is a procedural issue that is not unique to patent law, so the Court applies Fifth Circuit law here. *See, e.g.*, *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015) ("Whether proffered evidence is admissible at trial is a procedural issue not unique to patent law, and we therefore review the district court's decision to admit expert testimony under the law of the regional circuit . . . ."). The Court generally serves a critical gatekeeping role in determining whether to admit expert testimony. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). That said, the Court's gatekeeping function is less

important when, as here, the testimony in question will be presented in a bench trial. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.")[1] This is not to say that courts are free to abandon their duty to scrutinize expert testimony under *Daubert* when a case is tried without a jury. Rather, it simply means that, in the context of a bench trial, vigorous cross-examination will typically provide an adequate safeguard against dubious expert testimony and the Court can give the testimony whatever weight it deserves. *Holcombe v. United States*, No. 5:18-CV-00555, 2021 WL 4888337, at *3 (W.D. Tex. Mar. 5, 2021); *Lewis v. Cain*, 605 F. Supp. 3d 864, 869 (M.D. La. 2022) ("In the context of a bench trial, vigorous and skillful cross examination serves as an adequate safeguard against shaky opinion testimony.").

It is against this backdrop that the Court considers SB IP's motion to exclude Stoll's testimony. As an initial matter, SB IP does not seriously challenge Stoll's qualifications, as "Stoll is undoubtedly qualified as an expert on USPTO practice and procedure." *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036, 2020 WL 8269548, at *14 (E.D. Tex. Nov. 11, 2020). Instead, SB IP raises three objections to the reliability and scope of Stoll's testimony, arguing that: (1) Stoll offers legal opinions and conclusions that invade the province of the Court, (2) Stoll improperly "narrates" evidence, and (3) Stoll's testimony regarding the impact of the allegedly false statements on the USPTO and the intent of the various speakers is impermissible speculation (Dkt. #270). The Court addresses each issue in turn.

## I. Legal Opinions

First, SB IP argues that Stoll encroaches on the province of the Court by opining on legal issues, including the general duty of candor and good faith to the USPTO and inequitable conduct

---

[1] The Court has already bifurcated the issues in this case, and it will hold a bench trial on Vivint's inequitable conduct defense (Dkt. #317).

4

(Dkt. #270 at pp. 6–9). For its part, Vivint argues that Stoll opines on the application of USPTO practice and procedures to this case, and that his citation to various authorities, including Federal Circuit law, is intended to explain the development of his opinions rather than to explain the law the to the Court (Dkt. #306 at pp. 6–7). The Court agrees with Vivint.

Indeed, in his initial report, Stoll explicitly states that his opinions are not intended to usurp the Court's role as the arbiter of the law, and that his discussion of existing caselaw is intended to explain his analysis (Dkt. #270, Exhibit 1¶ 37). There is a fine line between an expert opinion that properly applies a legal framework to the factual record and one that impermissibly provides legal opinions that invade the province of the court. *Compare Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (noting that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible"), *with Perez v. Texas*, No. 5:11-cv-00360, 2014 WL 12480146, at *1 (W.D. Tex. July 9, 2014) (noting that expert testimony "in the form of a legal opinion invades the province of the Court does not assist the trier of fact"). This line is particularly difficult to draw in patent cases, which invariably present mixed questions of law in fact. *Cf. Demodulation, Inc. v. United States,* 126 Fed. Cl. 499, 504 (2016).

But, having reviewed Stoll's expert reports, the Court concludes that his testimony does not stray so far over the line that it must be categorically excluded as SB IP contends. Instead, the bulk of Stoll's testimony is based on his extensive familiarity with USPTO practice and procedure. This type of testimony is admissible. *See, e.g.*, *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 3:17-CV-01118, 2019 WL 4452986, at *4 (S.D. Cal. Sept. 16, 2019) (denying request to categorically exclude expert testimony concerning USPTO practice and procedure and inequitable conduct). After all, there is no risk of juror confusion as it pertains to Stoll's testimony, and the

Court is confident that SB IP can address any issues regarding improper legal opinions if they arise at trial. *Lewis*, 605 F. Supp. 3d at 867.

## II. Description of Documents and Testimony Considered

Next, SB IP asks the Court to strike paragraphs 38 through 127 of Stoll's expert report and paragraphs 3 through 60 of his rebuttal report, as SB IP contends that Stoll is merely narrating facts without analysis in these portions of his reports (Dkt. #270 at p. 10).

To be sure, expert testimony that offers nothing more than a recitation of underlying facts from documents and witnesses can be excluded as such opinions are not useful to the finder of fact. *See, e.g.*, *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366, 2019 WL 6896674, at *2–*3 (E.D. Tex. Dec. 18, 2019). But it is also "entirely permissible" for an expert to explain the facts that form basis of his opinion. *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 1233651, at *7 (E.D. Tex. Apr. 26, 2022); *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2077821, at *8 (E.D. Tex. May 9, 2019) (rejecting argument that case background section of expert's report should be excluded). In the end, issues relating to the facts and sources of an expert's opinion "affect the weight of to be assigned that opinion rather than its admissibility." *See United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). Thus, the Court will not strike the portions of Stoll's reports that set out background facts. That is not to say that the Court accepts these facts as true or undisputed, and, to the extent that Stoll testifies to them, SB IP will be entitled to probe his personal knowledge (or lack thereof) through cross-examination.

## III. Testimony Regarding the Impact of Allegedly False Statements

Finally, SB IP seeks to exclude Stoll's opinions regarding the materiality of certain alleged misrepresentations and omissions and testimony regarding "subjective intent or state of mind of

another" (Dkt. #270 at p. 11). In essence, SB IP asks the Court to strike any opinions in which Stoll opines on an individual thought processes and subjective intentions as Stoll is definitively "not a mind reader" (Dkt. #270 at p. 13). In response, Vivint argues that Stoll does not purport to opine on anyone's mental processes, but, rather, that he relies on his extensive familiarity with the USPTO's policies and procedures to opine on the materiality and effect of alleged misrepresentations and omissions (Dkt. #306 at p. 13).

As other courts have recognized, Stoll is well qualified to testify on the materiality prong of the inequitable conduct inquiry as this is an inquiry that is analyzed from the perspective of the USPTO. *Shire Viropharma Inc. v. CSL Behring LLC*, No. 1:17-CV-00414, 2021 WL 1227097, at *30 (D. Del. Mar. 31, 2021). And, having reviewed Stoll's report, the Court is satisfied that his opinions on the question of materiality are sufficiently reliable to satisfy the baseline of admissibility. *Daubert*, 509 U.S. at 590–91. SB IP's arguments regarding speculation ultimately go the weight to which Stoll's opinions are entitled, rather than their admissibility. *Donation v. BP Expl. & Prod., Inc.*, No. 2:14-CV-1525, 2016 WL 11512966, at *1 (E.D. La. Feb. 3, 2016) (noting that argument that argument that expert report contains speculative opinions "affect[s] the weight to be assigned that evidence rather than its admissibility.") (cleaned up). And so, the Court is satisfied that SB IP's concerns regarding Stoll's testimony are best addressed through "vigorous cross-examination and presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

## CONCLUSION

For the foregoing reasons, the Court finds that Vivint has met its burden of showing that Stoll's expert testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial.

It is therefore **ORDERED** that Plaintiff's Motion to Exclude Robert Stoll's Testimony (Dkt. #270) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 15th day of June, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE