# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SB IP HOLDINGS, LLC, | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:20-cv-00886 |
| v. | § | Judge Mazzant |
| | § | |
| VIVINT, INC., | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant Vivint, Inc.'s *Daubert* Motion to Exclude the Unreliable Opinions of Plaintiff's Expert, Dr. Robert Akl (Dkt. #250); Plaintiff's Motion to Exclude Portions of Dr. Kevin C. Almeroth's Testimony (Dkt. #257); Defendant Vivint, Inc.'s *Daubert* Motion to Exclude the Unreliable Opinions of Plaintiff's Expert, David Leathers (Dkt. #259); Plaintiff's Motion to Exclude Portions of Dr. Kevin C. Almeroth's Testimony Regarding Non-Infringement (Dkt. #271); and Plaintiff's Daubert Motion to Strike the Unreliable Expert Opinions of Clarke B. Nelson (Dkt. #281). Having considered the motions and the relevant pleadings, the Court finds that: (1) Defendant Vivint, Inc.'s *Daubert* Motion to Exclude the Unreliable Opinions of Plaintiff's Expert, Dr. Robert Akl (Dkt. #250) should be **GRANTED in part**; (2) Plaintiff's Motion to Exclude Portions of Dr. Kevin C. Almeroth's Testimony (Dkt. #257) should be **GRANTED in part**; (3) Defendant Vivint, Inc.'s *Daubert* Motion to Exclude the Unreliable Opinions of Plaintiff's Expert, David Leathers (Dkt. #259) should be **GRANTED in part**; (4) Plaintiff's Motion to Exclude Portions of Dr. Kevin C. Almeroth's Testimony Regarding Non-Infringement (Dkt. #271) should be **GRANTED in part**; and (5) Plaintiff's Daubert Motion

to Strike the Unreliable Expert Opinions of Clarke B. Nelson (Dkt. #281) should be **GRANTED in part**.

## BACKGROUND

Plaintiff SB IP Holdings, LLC ("SB IP") accuses Defendant Vivint, Inc. ("Vivint") of infringement of the following patents and claims: claims 1, 8, 10, and 16 of U.S. Patent No. 9,485,478 ("the '478 Patent"); claim 1 of the U.S. Patent No. 9,635,323 ("the '323 Patent"); and claims 1, 5, 11, 16, and 17 of U.S. Patent No. 10,674,120 ("the '120 Patent") (collectively, the "Asserted Patents" and the "Asserted Claims") (Dkt. #275 at p. 6).

SB IP moves to exclude opinions of Vivint's technical expert, Dr. Kevin C. Almeroth (Dkt. #257; Dkt. #271), and Vivint's damages expert, Mr. Clarke B. Nelson (Dkt. #281). Vivint moves to exclude opinions of SB IP's technical expert, Dr. Robert Akl (Dkt. #250), and SB IP's damages expert, Mr. David Leathers (Dkt. #259).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594.  In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Id.* at 593–94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test."  *Id.* at 593.  As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152.  Accordingly, the decision to allow or exclude experts from testifying under

*Daubert* is committed to the sound discretion of the district court.  *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

### I.      Vivint's Motion to Exclude Dr. Akl

Vivint moves to exclude Dr. Akl for four reasons: (1) his technical apportionment analysis does not differentiate between conventional and patented features of the Asserted Claims (Dkt. #250 at p. 8); (2) he summarizes Vivint's surveys without analysis (Dkt. #250 at p. 10); (3) he analyzes Vivint's cross-license with Alarm.com without acknowledging differences between Alarm.com's Patents and the Asserted Patents (Dkt. #250 at p. 11); and (4) he does not use the Court's construction of "proximity sensor" properly (Dkt. #250 at p. 14).

#### A.      Dr. Akl's Technical Apportionment Analysis

Vivint asserts that Dr. Akl's technical apportionment analysis "fails to distinguish between the conventional and non-conventional aspects of the Asserted Claims" (Dkt. #250 at p. 6). Vivint contends that paragraphs 166–243 of Dr. Akl's report are unreliable because of this lack of distinction (Dkt. #250 at p. 8). According to Vivint, the Federal Circuit's precedent in *Exmark Manufacturing Co. Inc. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332 (Fed. Cir. 2018) requires experts to "distinguish between the patented improvement and the conventional components of a multicomponent product" (Dkt. #250 at p. 9 (citing *Exmark*, 879 F.3d at 1347–48)).

In response, SB IP argues that Dr. Akl's analysis falls within appropriate bounds because he followed a "well recognized and approved method" and "determined an appropriate percentage based on features implicated by the [A]sserted [P]atents" (Dkt. #314 at p. 8). SB IP

challenges Vivint's assertions by claiming "Vivint cites to no authority that apportionment must exclude conventional components included in the claims of the patented invention" (Dkt. #314 at p. 8). SB IP also notes that "[a]pportionment opinions should not be struck 'based on erroneous attribution to non-accused features' because 'the Defendant will have the opportunity to cross-examine [Dr. Akl] at trial" (Dkt. #314 at p. 8 quoting *Osseo Imaging, LLC v. Planmeca USA Inc.*, CA. No. 17-1386-LPS, 2020 WL 6318724, at *9 (D. Del. Oct. 28, 2020)).

Patentees "must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features . . . ." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021). "[A]pportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a products non-patented features; or by a combination thereof.'" *Exmark*, 879 F.3d at 1348. "The essential requirement is that the ultimate reasonably royalty award must be based on the incremental value that the patented invention adds to the end product." *Id.*

The Court finds Dr. Akl's technical apportionment analysis should not be excluded. Vivint takes issue with the way Dr. Akl attempted to distinguish between patented and unpatented features. Vivint acknowledges that Dr. Akl based his apportionment analysis "on [the] percentage of features *implicated* by the asserted claims" and critiques this method as "nonsensical because it suggests that a claim with multiple narrowing limitations (i.e. features) should be apportioned greater than a broader claim with fewer limitations" (Dkt. #333 at p. 6). Vivint should handle a critique of methodology on cross examination. "[I]f the underlying reasoning for [Dr. Akl's] methodology is flawed, absurd, or even irrational, then '[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof' will serve as the proper antidote for attacking these potentially 'shaky' arguments." *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-CV-00872, 2019 WL 5271814, at *15 (E.D. Tex. Nov. 5, 2019) (Mazzant, J.) (quoting *Daubert*, 509 U.S. at 596). So while Dr. Akl's opinion could ultimately be deemed erroneous, that decision lies with the jury. *See Osseo Imaging*, 2020 WL 6318724, at *9 (refraining from striking an apportionment decision as "arbitrary or based on erroneous attribution to non-accused features).

### B.   Dr. Akl's Use of Vivint's Surveys

Vivint argues that the Court should exclude the portion of Dr. Akl's report that cites to Vivint's surveys because it provides summary without analysis. Vivint asserts that paragraphs 151–165 of Dr. Akl's report do not amount to proper expert testimony because Dr. Akl "(a) provided *no analysis* in these sections; (b) is admittedly not a survey expert able to analyze the surveys he summarized; and (c) provided a summary of documents to 'assist the damages expert' without relying on these documents to support his own expert opinions . . ." (Dkt. #250 at p. 10). Because Dr. Akl did not provide any analysis, Vivint claims, Dr. Akl's "impermissibl[e] summar[y]" of factual documents does not actually help the jury (Dkt. #250 at p. 10).

SB IP argues that paragraphs 151–165[1] should not be excluded because Dr. Akl used Vivint's surveys to "analyze the technical association between the resulting features lists and the Asserted Claims of the Asserted Patents" (Dkt. #314 at p. 6). Dr. Akl then, according to SB IP, "disclosed his opinions by highlighting and notating features associated with the Asserted Claims . . ." (Dkt.

---

[1] SB IP's Response (Dkt. #314) only addresses paragraphs 159–165 of Dr. Akl's report (*see* Dkt. #314 at pp. 5–7). But because SB IP's Sur-Reply (Dkt. #364) makes at least one reference to paragraphs 151–165 of the report (Dkt. #364 at p. 4), the Court assumes the entirety of SB IP's Response is also meant to address paragraphs 151–158.

#314 at p. 6). Dr. Akl "provide[d] a technical analysis 'to explain the technology and the features' by identifying features associated with the Asserted claims," and the surveys were "relevant to and inform[ed] Dr. Akl's opinions throughout his report" (Dkt. #364 at p. 4).

"Rule 702 requires that the expert's knowledge 'help' the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702 advisory committee's note to the 2023 amendment. In order for an expert opinion to serve this purpose, it must "employ [the expert's] expertise to help the jury understand facts or issues beyond a lay person's understanding." *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 6896674, at *2 (E.D. Tex. Dec. 18, 2019). After careful review of the paragraphs at issue, the Court finds that paragraphs 151–152 and 156–165 employ Dr. Akl's expertise to understand facts or issues beyond a lay person's understanding, but paragraphs 153–155 do not. Therefore, the Court strikes paragraphs 153–155 from Dr. Akl's report.

### C.    Dr. Akl's Analysis of the Cross-License

Vivint moves to exclude paragraphs 124–133 of Dr. Akl's report for "fail[ing] to identify or account for any technological *differences*" in his review of technically comparable licenses (Dkt. #250 at p. 11). Vivint claims that Dr. Akl's report "only provide[s] 'a loose or vague comparability between different technologies'" without discussion of technological differences (Dkt. #333 at p. 6 (quoting *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)). Dr. Akl's report, according to Vivint, "more closely aligns to [a] general field of technology analysis . . ." (Dkt. #333 at pp. 6–7).

SB IP counters that Dr. Akl's testimony falls within admissible bounds because Dr. Akl "discussed at length the comparability between the Alarm.com patents and the Asserted Patents"

(Dkt. #314 at p. 9). SB IP also argues that Vivint's attack on Dr. Akl is misplaced since "[i]t appears Vivint's disagreement is with Mr. Leathers's evaluation of the Alarm.com license and this is an attempt to attack Mr. Leathers's opinion indirectly through Dr. Akl" (Dkt. #314 at p. 11 n.4). SB IP also notes that Dr. Akl's opinion "was based on specific descriptions of the patents as well as elements and enabled features shared by the patents," rather than "broad comparability" (Dkt. #314 at pp. 11–12).

The Court finds Dr. Akl's analysis of the Alarm.com cross-license should not be excluded. The degree of comparability of license agreements is a "factual issue[] best addressed by cross examination and not by exclusion." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). While the court in *LaserDynamics* found that the lower court "erroneously permitted continued reliance" on certain patent licensing programs, it highlighted that the lower court erred because the licensing programs were not comparable *at all*. 694 F.3d at 80 ("[The district court's] ruling erroneously permitted continued reliance on this evidence when comparability between it and a hypothetical license to the '981 Patent was absent."). After review of the paragraphs at issue, the Court concludes that Dr. Akl has "met a showing of 'baseline comparability' and that the 'degree of comparability is a factual issue best address through cross-examination.'" *Bio-Rad*, 967 F.3d at 1374.

### D.    Dr. Akl's Application of Claim Construction

Vivint asserts that the Court should exclude Dr. Akl's "infringement analysis on terms that contain 'proximity sensor/detector' limitations" because his analysis "contravene[s] the Court's claim construction decision" (Dkt. #250 at p. 14). Vivint argues that Dr. Akl, in direct

8

contravention of the Court's claim construction, essentially concludes that the proximity sensor/detector limitations can be "satisfied by a portion of a field of view" (Dkt. #250 at p. 14).

SB IP argues that Dr. Akl "does not contend that range in the context of a proximity sensor/detector refers to 'a portion of a field of view' nor does Dr. Akl's analysis conflate range with 'a portion of a field of view' as Vivint contends" (Dkt. #314 at p. 13).

The Court construed "proximity sensor" and "proximity detector" to mean "hardware and/or software that detects presence of an object within a predetermined range" (Dkt. #71 at p. 30). In the Court's understanding of the term "range," "range" cannot "refer to a portion of a field of view" (Dkt. #71 at p. 29). The Court's construction requires "predetermined range" to "refer to some distance (albeit without necessarily measuring what the distance actually is)" (Dkt. #71 at p. 30). "Finally, the word 'predetermined' in the Court's construction does not preclude something from being changed, such as by a user . . ." (Dkt. #71 at p. 30).

The Court finds Dr. Akl's analysis falls within acceptable use of the Court's contructions of "proximity sensor" and "proximity detector." In his analysis, Dr. Akl uses phrases like "an ROI [[Region of Interest]] is chosen in the region of a porch *close to the camera*," "the camera can isolate detection events from activity that is happening *further away*," and "setup regions that are within a *closer proximity* to the camera," thus properly constraining his analysis to refer to some distance (Dkt. #250, Exhibit 7 at p. 5) (emphasis added).

## II.    SB IP's Motion to Exclude Dr. Almeroth

SB IP moves to exclude Dr. Almeroth[2] for two reasons: (1) he opines on the eligibility of SB IP's patents, even though that is a question of law for the Court (Dkt. #257 at p. 1), and (2) he

---

[2] SB IP separately moved to exclude portions of Dr. Almeroth's testimony on non-infringement (Dkt. #271). That motion is addressed below. *Infra* IV.

"opines on the issue of inventorship" when the determination of inventorship is a question of a law (Dkt. #257 at p. 2).

### A.    Dr. Almeroth's Opinions on Patent Eligibility

SB IP seeks to exclude Dr. Almeroth's opinions on patent eligibility because "the ultimate question of patent eligibility under § 101 is an issue of law" (Dkt. #257 at p. 1). Vivint responds that while patent eligibility is ultimately a question of law, "the question of whether a claim limitation or combination of claim limitations is more than routine, conventional, or well-understood . . . is a question of fact, appropriate for jury determination" (Dkt. #302 at p. 2).

The parties agree to exclude paragraphs 1687–1690 and paragraph 1693 of Dr. Almeroth's testimony (Dkt. #302 at p. 3; Dkt. #331 at p. 2). Accordingly, the Court excludes that testimony from presentation to the jury. The Court notes that "Vivint reserves the right to rely on Dr. Almeroth's testimony during any proceeding or briefing outside of the jury trial" (Dkt. #302 at p. 3).

The parties dispute the admissibility of paragraphs 1703 and 1704 of Dr. Almeroth's report. Paragraph 1703 discusses why the claimed elements "[w]hether individually or in combination . . . do not add anything to the abstract idea" but instead recite "general features," "routine features," and "generic components" (Dkt. #257, Exhibit 1 ¶ 1703). And paragraph 1704 simply states: "It is [Dr. Almeroth's] opinion that the Asserted Claims do not claim patentable subject matter" (Dkt. #257, Exhibit 1 ¶ 1704).

With regard to paragraph 1703, the Court will allow Dr. Almeroth's opinion to the extent it addresses the factual question of why "the asserted claims were each well-understood, routine, [or] conventional as of the time of the asserted patents." *Innovation Scis., LLC v. Amazon.com, Inc.*,

No. 4:18-cv-474, 2021 WL 2075677, at *6 (E.D. Tex. May 24, 2021); *Infernal Tech., LLC v. Sony Interactive Ent. LLC*, No. 2:19-CV-00248-JRG, 2021 WL 405813, at *3 (E.D. Tex. Feb. 3, 2021) ("[The technical expert] may testify to the jury about whether a person having ordinary skill in the art would understand the claim limitations, alone or in combination, to be routine, conventional, or well-understood."). But the Court excludes for the purposes of presentation to the jury Dr. Almeroth's opinion regarding any identification of an abstract idea and any testimony not directly related to why the Asserted Claims would have been well-understood, routine, or conventional.

With regard to paragraph 1704, Vivint agrees to limit Dr. Almeroth's opinion in front of the jury to "simply opin[ing] that the claimed elements are not patentable because they are generic, routine, or well-understood without referring to the underlying abstract idea" (Dkt. #362 at p. 3). The Court accepts Vivint's proposed limitation and will allow Dr. Almeroth's opinion on this limited basis.

### B.     Dr. Almeroth's Opinions on Inventorship

SB IP seeks to exclude Dr. Almeroth's opinions on inventorship because his opinions "are directed only to the determination of inventorship and should be excluded" (Dkt. #257 at p. 2). SB IP also considers Dr. Almeroth's opinions improper because he "fails to provide any technical analysis regarding what the documents [cited in the report] purportedly show or compare any evidence to the claims of the [Asserted Patents]" (Dkt. #257 at pp. 2–3).

Vivint asserts Dr. Almeroth's testimony is proper because he "is uniquely qualified to interpret the technical abilities of both Mr. Ozoeneh and Mr. Carter, which is a factual issue underlying the inventorship dispute" (Dkt. #302 at p. 5). And because Dr. Almeroth "considers

Mr. Ozoeneh's and Mr.'s Carter's inventorship claims based on his technical knowledge," the Court should allow his testimony (Dkt. #302 at p. 4).

"Inventorship is a mixed question of law and fact: The overall inventorship determination is a question of law, but it is premised on underlying questions of fact." *Ultravision Techs., LLC v. GoVision LLC*, No. 2:18-cv-00100-JRG-RSP, 2021 WL 2188710, at *2 (E.D. Tex. May 25, 2021). "[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *Id.* While technical experts may provide testimony on the issue of inventorship, they may not "opine as to whether [alleged co-inventors] are more credible." *Oasis Rsch., LLC v. Adrive, LLC*, No. 4:10-CV-435, 2013 WL 12156381, at *2 (E.D. Tex. Mar. 1, 2013). They may present "analysis and opinion on objective indicators of inventorship." *Id.* When preparing testimony on inventorship, the expert may consider "documentary evidence and [] deposition testimony of . . . the inventor named on the patents-in-suit[] and the alleged co-inventors and arrive[] at an opinion as to whether the alleged contributions of the alleged co-inventors relate to the claims of the patents-in-suit." *Id.*

The Court will not exclude the entirety of Dr. Almeroth's testimony, but it will exclude parts. The Court excludes Dr. Almeroth's summary of the legal standard for inventorship, paragraphs 1711–1716, because the Court will charge the jury on the applicable law. The Court allows paragraphs 1717–1741 of Dr. Almeroth's report, as they demonstrate Dr. Almeroth's consideration of "documentary evidence and [] deposition testimony" of Mr. Ozoeneh and Mr. Carter. *Id.*

The Court excludes paragraphs 1748–1749 of Dr. Almeroth's report, as Vivint has not met its burden to demonstrate why litigation history is an "objective indicator[] of inventorship." *Id.*

The Court also excludes paragraph 1750 of the report, as it is not tied to "whether the alleged contributions of the alleged co-inventors relate to the patents-in-suit." *Id.* The Court also will not allow Dr. Almeroth to unequivocally state to the jury that Mr. Carter "was not qualified as a person of ordinary skill in the art with respect to the '644 Patent family . . ." (Dkt. #257, Exhibit 1 ¶ 1744). The Court allows the remainder of the testimony.

### III.     Vivint's Motion to Exclude Mr. Leathers

Vivint moves to exclude Mr. Leathers's opinions for five reasons: (1) his apportionment analysis "rests on Dr. Akl's unreliable opinions" (Dkt. #259 at p. 6), (2) he selects his royalty rate "*because* it is within[] a range of possible rates that he creates through an arbitrary 50/50 profit split" (Dkt. #259 at p. 7), (3) he relies on a non-comparable license "at the exclusion of many comparable licenses" (Dkt. #259 at p. 8), (4) he "fails to apportion royalty bases for method claims" (Dkt. #259 at p. 11), and (5) his calculations violate the entire market value rule (Dkt. #259 at p. 12)

#### A.     Mr. Leathers's Apportionment Analysis

Vivint bases its entire challenge to Mr. Leathers's apportionment analysis on the appropriateness of Dr. Akl's apportionment (Dkt. #259 at p. 6). Because the Court declines to exclude Dr. Akl's opinion on apportionment, *supra* I.A, the Court declines to exclude Mr. Leathers's opinion.

#### B.     Mr. Leathers's Selected Royalty Rate

Vivint challenges Mr. Leathers's selected royalty rate because it claims "Mr. Leathers selects $1.00 [(the per-month, per-subscriber royalty rate)] from within, and *because* it is within, a range of possible rates that he creates through an arbitrary 50/50 profit split" (Dkt. #259 at p. 7).

Vivint asserts that such an untethered and arbitrary choice of profit split cannot serve as the basis for the royalty rate (*see* Dkt. #259 at p. 8). And the flawed starting point renders the royalty conclusions unreliable because "reasoning from a fundamentally flawed premise results in a fundamentally flawed conclusion" (Dkt. #259 at p. 8).

SB IP argues that "no royalty was calculated using 50%" (Dkt. #312 at p. 6). Rather, Mr. Leathers employed other factors, such as "a range of 'profit measures considered,'" an "implied royalty per subscriber based on 5% of Vivint's sales of accused components," and "the relative bargaining positions of both Vivint and Eyetalk/SBIP" (Dkt. #312 at pp. 6–7).

The Court finds that Mr. Leathers's royalty rate is admissible, but the Court excludes Mr. Leathers's opinion regarding 50 percent sharing of incremental profit. Mr. Leathers does mention a "50 percent sharing of this incremental profit" in the report (Dkt. 259, Exhibit 2 ¶¶ 339, 381). But the Court agrees with SB IP that Mr. Leathers provided "other analysis to support his royalty opinions" (Dkt. #312 at p. 6), such as a "5 percent running royalty rate . . . which implies a $0.64 per month subscriber royalty rate" (Dkt. #259, Exhibit 2 ¶ 340).

The Court will not allow Mr. Leathers to present the 50 percent sharing of incremental profit to the jury as a basis to justify the ultimate royalty rate. The fact that Mr. Leathers does a "calculation of 50 percent to help frame the resulting figures" in "almost every other case [he is] involved in," without providing any basis for using that calculation in this particular case, indicates to the Court that this is not reliable testimony for this case (Dkt. #312 at p. 8). The Court requires "testimony tied to the particular facts." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014). The Court also agrees with Vivint that neither SB IP nor Mr. Leathers can rely on the $0-2.60 and $0-2.03 ranges in SB IP's briefing to justify Mr. Leathers's royalty rate, as SB IP has

not demonstrated Mr. Leathers relied on those numbers himself (Dkt. #312 at p. 6 (stating the above ranges without reference to Mr. Leathers's report)). Accordingly, the Court excludes any testimony related to a "calculation of 50 percent" or the $0-2.60 and $0-2.03 ranges in SB IP's briefing.

### C.    Mr. Leathers's Analysis of Comparable Licenses

Vivint challenges Mr. Leathers's use of the "2013 cross-license agreement between third party Alarm.com and Vivint" (Dkt. #259 at p. 8). It challenges both the technological and economic comparability of the cross-license agreement such that it does not provide a sufficient basis for the $1.00 royalty amount (Dkt. #259 at pp. 8–9).

The Court declines to exclude Mr. Leathers's testimony based on his reliance on Dr. Akl's analysis of technological comparability. The Court found Dr. Akl's testimony admissible, *supra* I.C, so the Court finds any challenge to Mr. Leathers's reliance is also best left to cross-examination.

As to economic comparability, Vivint posits that Mr. Leathers's economic comparability analysis rests on "insufficient facts and data" (Dkt. #259 at p. 10). Vivint asserts that Mr. Leathers "conduct[ed] his 'analytical method' based on various and financial technical inputs" but that he "did not attempt any similar analysis of the 2013 cross-license based on any financial or technical inputs . . . that he deemed necessary to determine a royalty rate for the [Asserted Patents]" (Dkt. #259 at p. 10). In response, SB IP characterizes Vivint's position as a "strawman argument" because it supposedly imposes unrequired analysis (Dkt. #312 at p. 9). SB IP also cites to several paragraphs purporting to perform economic comparability analysis (Dkt. #312 at p. 10 (citing Dkt. #312, Exhibit 1 ¶¶ 36–56, 103–15, 122–55)).

After careful review of the report, the Court will not exclude Mr. Leathers's reliance on the 2013 cross-license. While it is possible that Mr. Leathers's use of the 2013 cross-license is flawed, "[t]he jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010). Mr. Leathers does provide a basis for depending on the 2013 cross-license (*see* Dkt. # 312, Exhibit 1 ¶¶ 302, 351). Vivint may reveal flaws in Mr. Leathers's reasoning through cross-examination.

### D.      Mr. Leathers's Apportionment with Respect to Method Claims

Vivint claims Mr. Leathers's damages opinion regarding claims 1 and 8 of the '478 Patent is unreliable because it "fails to apportion royalty bases for method claims" (Dkt. #259 at p. 11). Because Mr. Leathers did not "apportion[] based on the extent of allegedly infringing use of the accused systems," Vivint argues his damages opinion should be excluded. SB IP responds that "Mr. Leathers analyzed Vivint's own documentation of the importance of the functionality in the view of Vivint's customers and also the frequency of that functionality in customer interactions with the accused systems" (Dkt. #312 at p. 11).

"[W]here the only asserted claim is a method claim, the damages base should be limited to products that were actually used to perform the claimed method." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022). While Federal Circuit precedent does not have a "rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence," there should be an indication that a damages expert assessed or relied on some evidence "that estimated the amount or percentage of sold devices that were actually used to infringe the claimed method." *Id.*

The Court finds that Mr. Leathers's opinion on apportionment with respect to claims 1 and 8 of the '478 Patent is admissible. Mr. Leathers testified that he assessed or relied on Dr. Akl's apportionment determinations (Dkt. #259, Exhibit 3 at p. 5 (noting that Mr. Leathers "review[ed Dr. Akl's] calculations and how he quantified [the apportionment determination] and underst[ood] how [Dr. Akl] went about doing that")). To the extent Vivint wishes to challenge Mr. Leathers's reliance on Dr. Akl's testimony or reveal potential errors in his analysis, Vivint may do so on cross-examination.

### E.     Mr. Leathers's Alleged Violation of the Entire Market Value Rule

Vivint moves to exclude Mr. Leathers's analysis of *Georgia-Pacific* factor 13 because it does not "show[] that patented features are the sole basis for consumer demand for [Vivint's] systems," therefore violating the entire market value rule (Dkt. #259 at p. 13). Vivint also claims that because Mr. Leathers uses the "analytical approach," his analysis based on the entire market value rule serves no purpose:

> Especially considering that Mr. Leathers'[s] "analytical approach" is specifically intended to begin from and be based on the incremental revenue and profit generated by accused subscription packages over non-accused subscription packages, Mr. Leathers'[s] additional calculation of total profit and total apportioned profit based on the entire market value of the entire accused subscription package serves no purpose but to skew the damages horizon for the jury.

(Dkt. #259 at p. 13). SB IP, in response, states that Mr. Leathers performed this analysis because "Vivint only bundles its offerings as a package[;] it neither sells standalone units nor tracks revenue by standalone units, such as a camera or video doorbell" (Dkt. #312 at p. 13). And SB IP notes that "Mr. Leathers uses the analytical approach, which determines the ***incremental*** profit from selling the infringing system and does not apply the entire market value rule" (Dkt. #312 at p. 14).

17

"The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for consumer demand." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 978 (Fed. Cir. 2018). "[I]t is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the use of the [overall product]." *VirnetX*, 767 F.3d at 1326–27. The Federal Circuit distinguished that customers "choosing" a system that practices a patent is different than the patented feature "motivating" the purchase:

> [I]f given a choice between two otherwise equivalent [devices], only one of which practices [the asserted patent], proof that consumers would choose the [device] having the [asserted patent] functionality says nothing as to whether the presence of that functionality is what motivates consumers to buy a [device] in the first place.

*LaserDynamics*, 694 F.3d at 68. The Federal Circuit has "cautioned against reliance on the entire market value of the accused products because it 'cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.'" *Id.* at 1327.

The Court finds that Mr. Leathers did apply the entire market value rule in paragraphs 332–334 of his report, and SB IP does not meet its burden to demonstrate that the Asserted Patents are what "motivate" consumers. Accordingly, the Court excludes paragraphs 332–334 of Mr. Leathers's report.

## IV.    SB IP's Motion to Exclude Dr. Almeroth's Testimony on Noninfringement

SB IP moves to exclude Dr. Almeroth's testimony on noninfringement because it argues that Dr. Almeroth's opinions "engage in claim construction, contradict the Court's claim construction order, and circumvent the claim construction process" (Dkt. #271 at p. 7). Specifically, SB IP asks the Court to exclude the following paragraphs that relate to the following claim terms:

| Claim Term(s) | Proposed Paragraphs for Exclusion |
|---|---|
| "Streaming video" and "streaming digital video" | ¶¶ 429, 431–34, 438–60 (Dkt. #271 at p. 7) |
| "Computer configured for wireless communication with the wireless device . . . [and] configured for communication with each of said at least one peripheral devices" | ¶¶ 295–308 (Dkt. #271 at p. 9) |
| "Transmitting digital streaming video to a peripheral device, which is a smartphone, upon detection of a person by the motion sensor" | ¶¶ 309, 311, 312–28, 329–45 (Dkt. #271 at p. 10) |
| "Keypad" and "keypad comprising/having one or more buttons" | ¶¶ 234, 236–69 (Dkt. #271 at p. 12) |
| "Recognition of a person" | ¶¶ 581, 584–92 (Dkt. #271 at p. 12) |
| "Associated with a respective user" | ¶¶ 538, 541–56 (Dkt. #271 at p. 13) |
| "Redundant system" | ¶¶ 508, 510–37 (Dkt. #271 at p. 13) |
| "Wireless device" | ¶¶ 111, 114–51 (Dkt. #271 at p. 13) |

All the terms listed above have their plain meaning. The Court explicitly construed some to have their plain meaning (Dkt. #71 at pp. 12, 22, 33, 37), and the remaining unconstrued terms also have their plain meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312, 1313 (Fed. Cir. 2005) (en banc).

"The Court is the sole arbiter of claim construction disputes." *Ultravision Techs., LLC v. GoVision LLC*, No. 2:18-cv-00100-JRG-RSP, 2021 WL 2144788, at *2 (E.D. Tex. May 26, 2021) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009)). "An expert is bound by the claim construction set forth by the Court." *Id.* "Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion." *Id.*

When a claim term has its plain and ordinary meaning, parties may present evidence to the jury of what the plain and ordinary meaning of the term is in the context of the patent. *See Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, at *4 (E.D. Tex. Aug. 28, 2017). Consequently, experts may "opine as to the plain and ordinary meaning

of the term as known within the art to a person of ordinary skill." *Salazar v. AT&T Mobility*, No. 2:20-CV-00004-JRG, 2021 WL 11703427, at *1 (E.D. Tex. July 28, 2021). But there is a specific way that experts may opine as to that plain and ordinary meaning without venturing into impermissible claim construction: they may "review the [Asserted Claims] to determine the technical context of the claimed invention and then use [their] technical understanding to form [their] opinions on whether the accused products infringe." *Varta Microbattery GmbH v. Audio P'ship LLC*, No. 2:21-CV-00400-JRG-RSP, 2023 WL 5192986, at *3 (E.D. Tex. Aug. 11, 2023). They should not use "intrinsic evidence, such as the surrounding claim language, specification, or prosecution history—entirely divorced from any accused products—to narrow the plain and ordinary meaning of the claims . . . ." *Id.*

After careful review of the proposed paragraphs for exclusion, the Court finds the following paragraphs and testimony venture beyond permissible opinions regarding the plain and ordinary meaning of their respective terms and are excluded.

| Claim Term(s) | Excluded Paragraphs/Testimony |
|---|---|
| "Computer configured for wireless communication with the wireless device . . . [and] configured for communication with each of said at least one peripheral devices" | ¶¶ 299–302, 303[3] |
| "Transmitting digital streaming video to a peripheral device, which is a smartphone, upon detection of a person by the motion sensor" | ¶¶ 336–38, 339[4] |
| "Keypad" and "keypad comprising/having one or more buttons" | ¶¶ 236–239, 245, 248, 249, 251, 260[5] |
| "Recognition of a person" | ¶ 584 |
| "Redundant system" | ¶ 511 |

[3] Regarding paragraph 303, the Court only excludes the testimony related to the specification and the figures.
[4] Regarding paragraphs 338 and 339, the Court only excludes the testimony related to the specification and the figures.
[5] Regarding paragraphs 245, 249, and 251, the Court only excludes the testimony related to the specification and the figures.

| "Wireless device" | ¶¶ 118, 125, 139[6] |

## V.      SB IP's Motion to Strike Mr. Nelson

SB IP moves to strike Mr. Nelson's testimony for six reasons: (1) he "failed to provide the required disclosures under Rule 26" (Dkt. #281 at p. 5), (2) his "opinions regarding the first and third hypothetical negotiation dates are unreliable" (Dkt. #281 at p. 7), (3) his interpretations of licenses "contradict the plain text of the licenses" (Dkt. #281 at p. 8), (4) his "opinions on the amount of [recurring monthly revenue (RMR)] associated with doorbell cameras are unreliable" (Dkt. #281 at p. 9), (5) his "opinions on economic considerations for any design arounds" simply "parrot[] conclusions from a party witness" (Dkt. #281 at p. 12), and (6) his "opinions on comparable licenses are unreliable" (Dkt. #281 at p. 12).

### A.      Mr. Nelson's Disclosures under Rule 26

SB IP asserts that Mr. Nelson did not meet his disclosure requirements under Rule 26, and his failure to do so "prevents anyone from testing the reliability of Mr. Nelson's opinions" (Dkt. #281 at p. 6). Vivint responds that (1) "whether Mr. Nelson's report complies with Rule 26[] is not a *Daubert* issue" (Dkt. #326 at p. 4) and (2) Mr. Nelson complied with Rule 26 by "disclos[ing] the documents given to him to review . . ." (Dkt. #326 at p. 4).

Parties may move to exclude expert testimony for failure to comply with Rule 26 as well as failure to show reliability under *Daubert. Barnes v. BTN, Inc.*, 555. F. App'x 281, 284 (5th Cir. 2014); *see also DiSalvatore v. Foretravel, Inc.*, No. 9:14-CV-00150, 2016 WL 7742824, at *6 (E.D. Tex. July 20, 2016) ("[T]he undersigned finds it most efficient to determine whether those disclosures pass Rule 26 muster before delving into an application of the *Daubert* factors.").

---

[6] Regarding paragraph 139, the Court only excludes the testimony related to the specification and the figures.

Rule 26 requires expert witnesses to disclose "the facts or data considered by the witness in forming [the opinions to be offered]." FED. R. CIV. P. 26(a)(2)(B)(ii). The 2010 amendment to the Federal Rules clarified that "facts or data" should be interpreted broadly:

> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

FED. R. CIV. P. 26(a)(2)(B)(ii) advisory committee's notes to 2010 amendment. But the Rule should also be read within the purpose of Rule 26(a): "The purpose of a detailed and complete expert report as contemplated by Rule 26(a) . . . [is to] prevent an ambush at trial." *Klein v. Fed. Ins. Co.*, No. 7:03–CV–102–D, 2014 WL 6885973, at *2 (N.D. Tex. Dec. 8, 2014) (internal quotations omitted).

The Court finds that Mr. Nelson did not adequately disclose the documents he "considered" in his Schedule 2, so he may not rely on all those documents in his testimony. SB IP presented evidence in its Motion that Mr. Nelson did not look at every document identified in the Schedule 2 (Dkt. #281 at pp. 5–6). Vivint characterizes Mr. Nelson's over-disclosure as "conservative and good-faith" (Dkt. #326 at p. 4), but Mr. Nelson's Schedule 2 does not adequately capture documents that he actually reviewed. As Vivint notes, the Schedule 2 discloses "documents *given to him* to review . . ." (Dkt. #326 at p. 4) (emphasis added). If Vivint presented evidence that Mr. Nelson "reviewed and considered every document identified in his report," the voluminous number would not be an issue. *Santa Clarita Valley Water Agency v. Whittaker Corp.*,

No. Cv 18-06825 GW (RAOx), 2020 WL 6260015, at *1 (C.D. Cal. Sept. 16, 2020). But that is not the case here.

Accordingly, the Court will only allow Mr. Nelson to give testimony "discussing, considering, or referring to documents cited in his expert report outside of Schedule 2 . . ." (Dkt. #281 at p. 6). The Court does not believe excluding the entirety of Mr. Nelson's testimony is appropriate, but it will only allow testimony related to the material above.

### B.      Mr. Nelson's Analysis of Hypothetical Negotiation Dates

SB IP claims that Mr. Nelson's opinion regarding hypothetical negotiation dates is unreliable because it "discloses no methodology or metrics" and is "completely untethered to the facts and data he recites" (Dkt. #281 at p. 7). Vivint responds that Mr. Nelson's report includes sufficient support for his hypothetical negotiation date analysis (Dkt. #326 at pp. 5–6).

After review, the Court will not exclude Mr. Nelson's analysis of the first and third hypothetical negotiation dates. SB IP essentially asserts that Mr. Nelson does not adequately support his opinions, and that can be addressed through cross examination. *Mobility Workx*, 2019 WL 5721814, at *8 ("Indeed, cross-examination, rather than exclusion, is more a more appropriate means to establish the weight of the evidence, for it is not the role of the Court to weigh the strength of [the expert's] conclusions.").

### C.      Mr. Nelson's Interpretation of Licenses

SB IP moves to exclude Mr. Nelson's opinions "based on his interpretation of the scope or terms on any licenses, in particular where his interpretations and conclusion contradict the plain text of the licenses" (Dkt. #281 at p. 8). SB IP argues that Mr. Nelson deviated from the plain meaning of the licenses (Dkt. #281 at p. 8). Vivint responds that Mr. Nelson properly

"consider[ed] licensing terms for the [Asserted Patents] to perform a reasonable royalty analysis" (Dkt. #326 at p. 7). He did not use licenses to "construe contract terms" but instead to "opine on the hypothetical negotiations between the relevant parties . . ." (Dkt. #370 at p. 5).

The Court agrees with Vivint and will not exclude Mr. Nelson's analysis of licensing terms. "The first of the fifteen factors in *Georgia-Pacific* is 'the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.'" *LaserDynamics*, 694 F.3d at 79 (quoting *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). Mr. Nelson provides enough support for his analysis for the Court to deem it admissible. To the extent SB IP believes Mr. Nelson incorrectly applied those licenses to his reasonable royalty analysis, SB IP can address that through cross-examination.

### D.    Mr. Nelson's Opinions on Recurring Monthly Revenue

SB IP moves to exclude Mr. Nelson's opinions on recurring monthly revenue (RMR) because "his methodology is scientifically unsound for the proposition he purports, and as a result, it is unreliable and will not aid the jury" (Dkt. #281 at p. 10). SB IP outlines four issues: (1) Mr. Nelson "did not account for variation in [] subscriptions outside of the doorbell camera" (Dkt. #281 at p. 10), (2) Mr. Nelson provided no basis for his assumption that the data containing thousands of customers would "smooth out any variations in the aggregate" (Dkt. #281 at p. 10), (3) Mr. Nelson relied on "two made-for-litigation Excel sheets" that he did not prepare himself (Dkt. #281 at p. 10), and (4) Mr. Nelson's opinions "are untethered from Vivint's verified discovery responses that Plaintiff has relied on to date" (Dkt. #281 at p. 11).

Vivint responds that Mr. Nelson "provided a reasonable *rebuttal* analysis to determine" Vivint's recurring monthly revenue (Dkt. #326 at p. 10). Vivint also claims that Mr. Nelson's

assumption related to data containing thousands of numbers "appropriately describes the law of large numbers" (Dkt. #326 at p. 10). Finally, Vivint claims that SB IP does not provide evidence that the data Mr. Nelson relied upon is inaccurate and that Mr. Nelson's opinions do not contradict Vivint's interrogatory responses (Dkt. #326 at p. 11).

The Court first addresses SB IP's second issue, namely, Mr. Nelson's assumptions around aggregate data. Reviewing the deposition testimony cited by SB IP, Mr. Nelson appears to rely on his experience as a financial expert to generate his opinions and assumptions (Dkt. #281, Exhibit 1 at 140:3-8, 140:19-20). "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." FED. R. EVID. 702 advisory committee's note to the 2000 amendment. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* Vivint asserts that Mr. Nelson's "explanation appropriately describes the law of large numbers" but does not provide any evidence that Mr. Nelson considered the law of large numbers (Dkt. #326 at p. 10). Vivint also has not indicated where in Mr. Nelson's report he explains how his experience as a financial expert leads to his conclusion that the aggregate data is smoothed out (*see* Dkt. #326 at p. 10). Therefore, the Court excludes any testimony Mr. Nelson may give regarding aggregate data.

While the Court excludes any testimony Mr. Nelson may give regarding aggregate data, the Court permits his remaining opinions on the amount of RMR.

### E.     Mr. Nelson's Considerations of Design Arounds

SB IP moves to exclude Mr. Nelson's opinion on design around efforts because it "amount[s] to nothing but parroting conclusion from a party witness" (Dkt. #281 at p. 12). Vivint

points to "documentary evidence, reliance on Vivint's technical expert, and [Mr. Nelson's] own discussions with Vivint" as a proper basis for Mr. Nelson's opinion (Dkt. #326 at p. 11).

The Court finds Mr. Nelson's analysis on this topic admissible and will not exclude it.

### F.      Mr. Nelson's Opinions on Comparable Licenses

SB IP claims Mr. Nelson's opinions on comparable licenses are unreliable because he "provides no comparison of Vivint to the licensees to determine if the licensing relationship is even comparable" (Dkt. #281 at p. 12). In particular, he "fails to account for significant differences in the circumstances and relationships of the licensing parties . . ." (Dkt. #281 at p. 13). Vivint counters that "Mr. Nelson properly considered prior licenses to the [Asserted Patents]" and that any complaint SB IP has "go[es] to the weight, and not the admissibility, of Mr. Nelson's testimony" (Dkt. #326 at pp. 12, 13).

After review, the Court finds Mr. Nelson's opinions on comparable licenses admissible and does not exclude this testimony.

### CONCLUSION

It is therefore **ORDERED** as follows:

- Defendant Vivint, Inc.'s *Daubert* Motion to Exclude the Unreliable Opinions of Plaintiff's Expert, Dr. Robert Akl (Dkt. #250) is **GRANTED in part.** Accordingly, the Court strikes paragraphs 153–155 of Dr. Akl's report.

- Plaintiff's Motion to Exclude Portions of Dr. Kevin C. Almeroth's Testimony (Dkt. #257) is **GRANTED in part.** Accordingly:

  o The Court strikes paragraphs 1687–1690 and 1693 of Dr. Almeroth's report.

- o  The Court strikes Dr. Almeroth's opinion in paragraph 1703 regarding identification of an abstract idea and any testimony not directly related to why the Asserted Claims would have been well-understood, routine, or conventional.

- o  The Court limits Dr. Almeroth's opinion from paragraph 1704 to "simply opin[ing] that the claimed elements are not patentable because they are generic, routine, or well-understood without referring to the underlying abstract idea."

- o  The Court strikes paragraphs 1711–1716 and 1748–1750 of Dr. Almeroth's report, and Dr. Almeroth cannot state the jury that Mr. Carter "was not qualified as a person of ordinary skill in the art with respect to the '644 Patent family."

- Defendant Vivint, Inc.'s *Daubert* Motion to Exclude the Unreliable Opinions of Plaintiff's Expert, David Leathers (Dkt. #259) is **GRANTED in part.** Accordingly:

- o  The Court strikes any testimony related to a "calculation of 50 percent" and the $0-2.60 and $0-2.03 ranges from SB IP's briefing.

- o  The Court strikes paragraphs 332–334 of Mr. Leathers's report.

- Plaintiff's Motion to Exclude Portions of Dr. Kevin C. Almeroth's Testimony Regarding Non-Infringement (Dkt. #271) is **GRANTED in part.** Accordingly, the Court strikes the paragraphs listed in Section IV of this Order.

- Plaintiff's Daubert Motion to Strike the Unreliable Expert Opinions of Clarke B. Nelson (Dkt. #281) is **GRANTED in part.** Accordingly:

- o  Mr. Nelson may only give testimony discussing, considering, or referring to documents cited in his expert report outside of Schedule 2.

- o  Mr. Nelson may not give testimony regarding aggregate data.

**IT IS SO ORDERED.**

**SIGNED this 10th day of October, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE