# EXHIBIT A

# United States Court of Appeals for the Federal Circuit

———————

**FRESHUB, INC., FRESHUB, LTD.,**
*Plaintiffs-Appellants*

**v.**

**AMAZON.COM, INC., PRIME NOW, LLC, WHOLE FOODS MARKET SERVICES, INC., AMAZON.COM SERVICES LLC,**
*Defendants-Cross-Appellants*

———————

2022-1391, 2022-1425

———————

Appeals from the United States District Court for the Western District of Texas in No. 6:21-cv-00511-ADA, Judge Alan D. Albright.

———————

Decided: February 26, 2024

———————

PAUL J. ANDRE, Kramer Levin Naftalis & Frankel LLP, Redwood Shores, CA, argued for plaintiffs-appellants. Also represented by JAMES R. HANNAH, LISA KOBIALKA; CRISTINA MARTINEZ, New York, NY.

J. DAVID HADDEN, Fenwick & West LLP, Mountain View, CA, argued for defendants-cross-appellants. Also represented by RAVI RAGAVENDRA RANGANATH, SAINA S. SHAMILOV; TODD RICHARD GREGORIAN, ERIC YOUNG, San Francisco, CA.

———————————

Before REYNA, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Freshub, Ltd. and United States subsidiary Freshub, Inc. (together, Freshub) sued Amazon.com, Inc. and several of its subsidiaries (together, Amazon) in the Western District of Texas, asserting infringement of Freshub's patents on voice-processing technology, including U.S. Patent No. 9,908,153. As relevant here, Amazon denied infringement and also asserted, as a defense, that the patent should be declared unenforceable based on inequitable conduct assertedly committed by Freshub's parent company, Ikan Holdings LLC, in the Patent and Trademark Office—specifically, in its successful petition to revive the earlier-abandoned U.S. Patent Application No. 11/301,291, from which all of Freshub's asserted patents descend. A jury found that Amazon did not infringe the asserted claims of Freshub's three asserted patents, while rejecting Amazon's invalidity challenge—specifically, invalidity for lack of adequate written description. J.A. 6–14. The district court later denied Freshub's post-trial motions challenging the verdict. *Freshub, Inc. v. Amazon.com Inc.*, 576 F. Supp. 3d 458, 461 (W.D. Tex. 2021) (*Post-Trial Opinion*). Between the jury trial and the ruling on those post-trial motions, the court conducted a bench trial, in which no live testimony was presented, and found that Amazon had failed to prove the asserted inequitable conduct by clear and convincing evidence. *Freshub, Inc. v. Amazon.com, Inc.*, No. 21-cv-511 (W.D. Tex. Aug. 3, 2021), ECF No. 272 (*Inequitable Conduct Opinion*).

Freshub timely appealed. It argues that it is entitled to judgment as a matter of law that Amazon infringed the '153 patent, and it seeks a new trial overall because of assertedly prejudicial statements by Amazon at trial. Amazon timely cross-appealed. It seeks reversal of the district

court's finding that it failed to prove inequitable conduct. We have jurisdiction under 28 U.S.C. § 1295(a)(1). We affirm.

## I

## A

The '153 patent claims a voice-processing system that receives "user spoken words" and adds items to lists based on those words. '153 patent, col. 14, line 46, through col. 15, line 12. The specification discloses a variety of systems for shopping-list management, some of which use voice-processing technology. *Id.*, col. 8, lines 17–55. For example, in one embodiment, the system, in response to a "verbal[] order[]" for "a cereal by name," "translates the name into text or other computer readable form, and matches the text with text stored in association with a SKU [Stock Keeping Unit] (or other identifier) to locate the correct SKU." *Id.*, col. 8, lines 49–55.

Claim 1, the sole independent claim, reads:

1. A voice processing system comprising:

a first system configured to receive user spoken words comprising:

> a microphone;

> a wireless network interface;

> a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation;

> a first computer;

> non-transitory memory that stores instructions that when executed by the first computer cause the first system to perform operations comprising:

> > receive via the digitizer a verbal order, comprising at least one item, from a user, wherein the verbal order was captured by the microphone and digitized by the digitizer;
>
> > immediately transmit, using the wireless network interface, the digitized order to a computer system remote from the first system;
>
> the computer system, the computer system comprising:
>
> > a networks interface;
>
> > a second computer;
>
> > non-transitory memory that stores instructions that when executed by the second computer cause the computer system to perform operations comprising:
>
> > > receive, using the network interface, the digitized order from the first system;
> > >
> > > translate at least a portion of the digitized order to text;
> > >
> > > *identify an item corresponding to the text;*
> > >
> > > *add the identified item to a list associated with the user;*
> > >
> > > enable the list, including the identified item, to be displayed via a user display.

*Id.*, col. 14, line 46, through col. 15, line 12 (emphasis added to highlight claim language chiefly at issue on appeal).

Amazon sells consumer devices, such as the Amazon Echo, into which a user can speak to connect to a responsive voice service (called Alexa) that can perform a variety of voice-processing tasks. Amazon's Response Br. at 11–12. Among the voice-processing tasks is the maintenance of a shopping list, using user-provided prompts to modify a stored "shopping list" associated with the user. *Id.* at 14. Freshub accuses Amazon of infringing the '153 patent by its offering of the Echo and other devices for use with this shopping-list feature. Freshub's Opening Br. at 12; J.A. 575 (testimony by Freshub's expert mapping the '153 patent claims to the "Shopping List functionality").

### B

After trial in June 2021, the jury returned a verdict of noninfringement of all asserted claims, including those of the '153 patent. Freshub sought judgment as a matter of law of infringement under Federal Rule of Civil Procedure 50(b), arguing that the jury's verdict was not supported by substantial evidence. The district court disagreed. With respect to the '153 patent, the court concluded, among other things, that substantial evidence supported a finding that the accused Amazon features did not meet the claim requirement—which was not the subject of any requested or issued claim construction—that the system "identify an item corresponding to the text." *Post-Trial Opinion*, 576 F. Supp. 3d at 463. The court noted the testimony of Amazon's expert that, although the Alexa shopping-list feature adds text to a user's shopping list, it does not add "an item corresponding to the text," as the claim requires. *Id.*

Freshub also sought a new trial under Federal Rule of Civil Procedure 59(a) on the ground that Amazon had made certain prejudicial statements at trial, the "main basis" being references to the fact that Freshub is an Israeli company. *Id.* at 465; *see* J.A. 17411–16. Citing the absence of objection during trial and the standard requiring a "serious[ effect on] the fairness, integrity, or public reputation

of judicial proceedings," *Post-Trial Opinion*, 576 F. Supp. 3d at 466 (quoting *Reese v. Mercury Marine Division of Brunswick Corp.*, 793 F.2d 1416, 1429 (5th Cir. 1986)), the district court concluded that Freshub's allegations were "baseless" and denied the motion. *Id.* at 466–67. The district court did not separately discuss certain other arguments about prejudicial statements warranting a new trial—*e.g.*, statements that Freshub filed the application that became the '153 patent after Amazon announced relevant products, so that finding for Freshub would offend the Constitution's patent policy, and that Freshub initially abandoned the ancestor application, J.A. 17416–20. Earlier, Freshub had filed a motion in limine to preclude reference to the filing dates, but the court denied the motion. *Freshub, Inc. v. Amazon.com Inc.*, No. 21-cv-511, 2021 WL 2587713, at *1 (W.D. Tex. Jun. 13, 2021). And during trial, after initially allowing the mention of abandonment, the court excluded the evidence and gave a curative instruction at Freshub's request. *See* J.A. 17419–20, 17420 n.3 (noting curative instruction).

## C

Amazon asserted, as an affirmative defense to infringement, that inequitable conduct in the prosecution of the '291 application, from which all of the asserted patents here descend, rendered the asserted patents unenforceable. In June 2011, when Ikan Technologies Inc. was the assignee of the '291 application, the United States Patent and Trademark Office (PTO) issued a final office action rejecting the claims. J.A. 17056–65. On January 3, 2012, after Ikan Technologies failed to respond in the time allowed, the PTO sent counsel for Ikan Technologies a notice of abandonment of the application. J.A. 17067–68. On December 4, 2012, Ikan Technologies assigned a number of

patent interests, including the interest in the '291 application, to Ikan Holdings.  J.A. 17070–72.[1]

On January 20, 2017, counsel for Ikan petitioned the PTO to revive the '291 application under 37 C.F.R. § 1.137(a).  J.A. 17079–80.  Reflecting a prerequisite to revival, the pre-printed PTO form for the petition, referring to the period reaching back to the due date of the reply to the final office action, contained the following

> STATEMENT: The entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1.137(a) was unintentional.  [NOTE: The United States Patent and Trademark Office may require additional information if there is a question as to whether either the abandonment or the delay in filing a petition under 37 CFR 1.137(a) was unintentional (MPEP 711.03(c), subsections (III)(C) and (D)).]

J.A. 17080.  Ikan's attorney signed the form, thus making the above-quoted statement.  *Id.*  On April 20, 2017, the PTO granted the petition, J.A. 17074–76, stating that it was "relying on petitioner's duty of candor and good faith and accepting the statement that 'the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional,'" J.A. 17075 (citation omitted).

Amazon alleged and sought to prove that Ikan had intentionally misrepresented to the PTO that the '291 application had been unintentionally abandoned when it had instead been intentionally abandoned. J.A. 17127–37. The district court conducted a bench trial on that issue, in

---

[1]  Following the usage of the parties and the district court, we hereafter use "Ikan" to refer to the two Ikan entities without distinction, unless otherwise indicated.

which the evidence consisted of documents and deposition excerpts. J.A. 26–27. Although the evidence was limited for various reasons, including the invocation of attorney-client privilege, no issue is raised on appeal about the scope of the record.

Upon concluding that Amazon had failed to prove inequitable conduct by the requisite clear and convincing evidence, the district court granted Freshub partial judgment rejecting the inequitable-conduct defense. *Inequitable Conduct Opinion* at 14.[2] Specifically, the district court found that, while the parties did not dispute the materiality of the representation that the application had been unintentionally abandoned, Amazon had not offered clear and convincing evidence that the representation was actually false—*i.e.*, that Ikan had in fact intentionally abandoned the '291 application. *Id.* at 9–10. The district court also found that, even if the representation had actually been false (*i.e.*, even if Ikan had intentionally abandoned the application), Amazon had not offered clear and convincing evidence that the "single most reasonable inference" from the evidence, as required by *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc), was that either Ikan or its attorney had specifically intended to deceive the PTO with the STATEMENT in the petition to revive the application in 2017. *Inequitable Conduct Opinion* at 11–12.

───────────────

[2] The district court initially issued findings of fact and conclusions of law after its bench trial. *Freshub, Inc. v. Amazon.com, Inc.*, No. 21-cv-511, 2021 WL 8945738, (W.D. Tex. Jul. 30, 2021); J.A. 15–24. It later vacated that order, *Freshub, Inc. v. Amazon.com, Inc.*, No. 21-cv-511 (W.D. Tex. Aug. 9, 2021), ECF No. 274; J.A. 39, and instead granted Freshub's motion for judgment on partial findings, using much of the language that appeared in the vacated order. *Inequitable Conduct Opinion* at 1.

## II

We review denials of motions for judgment as a matter of law and for a new trial under regional circuit law. *Raytheon Co. v. Indigo Systems Corp.*, 895 F.3d 1333, 1338 (Fed. Cir. 2018). Here, under Fifth Circuit law, we review the judgment as a matter of law under the de novo standard, here asking if the underlying jury findings were supported by substantial evidence, *see Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 801 (5th Cir. 2018), and we review the denial of the motion for a new trial for abuse of discretion, *Encompass Office Solutions, Inc. v. Louisiana Health Service & Indemnity Co.*, 919 F.3d 266, 273 (5th Cir. 2019).

## A

In arguing for judgment as a matter of law, Freshub focuses on the three claim limitations whose coverage of the accused systems it says Amazon disputed at trial (for the first two) or after trial (for the third): (1) the requirement that, upon receiving spoken words and translating them to text, the system "identify an item corresponding to the text" and "add the identified item to a list," '153 patent, col. 15, lines 1–10; (2) the requirement that, upon receiving a "verbal order," the system create and transmit a "digitized order," *id.*, col. 14, lines 58–64; and (3) the requirement that the claimed "voice processing system" comprise "the computer system . . . comprising . . . a second computer" with a "non-transitory memory," *id.*, col. 14, line 46, through col. 15, line 1. Freshub argues that substantial evidence does not support a finding adverse to it with respect to any of those limitations. We agree with Amazon, however, that substantial evidence supports a finding of noninfringement because of the first limitation. That conclusion suffices to uphold the jury verdict; we need not address the other two limitations.

The claim limitation comes to us without a claim construction and without any argument from Freshub that

there should have been a claim construction.  *See* J.A. 4487, 4573.  For example, there is no claim construction of "item." Nor is there a claim construction indicating that a system comes within the claim as long as the actions taken upon execution of the system instructions even sometimes amount to performance of the claim-required operations. Moreover, Freshub's argument is only that the jury had to find literal infringement; it presents to us no argument about infringement under the doctrine of equivalents.  The substantial-evidence question is whether the jury could reasonably have found the claim limitation not to be met, considering the facts and the unconstrued limitation.  *See Avid Technology, Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048–49 (Fed. Cir. 2016); *Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1320–21 (Fed. Cir. 2003).

The determinative issue concerns the requirement that the system "identify an item."  Freshub contends that the shopping-list feature of Amazon's accused products, when used, sometimes ends up adding "items" to shopping lists because it translates user speech to text ("add bananas to my shopping list"), extracts a keyword ("bananas"), and appends the word "bananas" to the user's shopping list, resulting in a new "item" on the list.  *See* Freshub's Opening Br. at 33–39.  But there was evidence from which the jury could reasonably find the claim limitation, when given its ordinary meaning in the context of the patent, not to be met by the instructions for Amazon's shopping-list feature.

Amazon's expert testified that the Alexa shopping-list feature was programmed to add words to the list whether or not there exists a purchasable product corresponding to the text based on the user's words.  J.A. 1236–37.  That expert and a knowledgeable fact witness testified that, after "translat[ing] at least a portion of the order to digitized text," '153 patent, col. 15, lines 6–7, the shopping-list feature does not engage in any searching or matching before adding the translated text to the relevant list.  J.A. 1091– 93, 1235–37.  Thus, there was evidence that Alexa would

add "sad" or "unicorns in a can" to a shopping list when the user spoke such words. J.A. 1063, 1235–36. Amazon notes that, in its view, a distinct ("shopping cart") feature of Alexa *does* undertake the additional, explicit step of "identifying an item" that corresponds to the text. Amazon's Response Br. at 14 & n.3, 29. But Freshub did not accuse the shopping-cart feature as a basis for alleging infringement of the asserted '153 patent claims, and the accused shopping-list feature is different.

The jury could reasonably rely on that evidence to find noninfringement. One reasonable understanding of the "identify an item" claim language, in the context of the patent, is that it refers to a specific, purchasable item. The claim specifies adding an "item corresponding to the text," not the text itself, to the list. '153 patent, col. 15, lines 8–10. The claim requires an intermediate action, between the system's generating text and the system's adding an "item" to a list, and that requirement is reasonably understood to demand a choice from a known set of options—an understanding supported by the focus on "stored items" in the Abstract and Summary of the Invention. '153 patent, Abstract; *id.*, col. 1, lines 35–44. With no claim construction narrowing the meaning of the language, the jury was free to find that the shopping-list feature, unlike the shopping-cart feature, does not "identify an item corresponding to the text" and therefore does not come within the asserted claims of the '153 patent.

This conclusion suffices to reject Freshub's argument for judgment as a matter of law. We do not reach Freshub's arguments about other claim limitations.

## B

Regarding the district court's denial of its motion for a new trial, Freshub primarily argues that the district court should have granted a new trial because Amazon invoked the filing dates of the asserted patents in a prejudicial

manner.  Freshub's Opening Br. at 44–54.[3]  Freshub had
argued in a motion in limine that Amazon would, at trial,
use the dates to suggest that Freshub had filed the appli-
cations for the asserted patents specifically to target Alexa
unfairly, J.A. 14404–06, but the court denied the motion,
J.A. 4.  Freshub now argues that Amazon did just that at
trial, and that the district court therefore abused its discre-
tion in denying the motion in limine and in denying a new
trial.

Freshub has shown no abuse of discretion in denying a
new trial on this ground.  Freshub failed to object properly
to the mention of the filing dates, as required in this con-
text by Fifth Circuit law.  *See C. P. Interests, Inc. v. Cali-
fornia Pools, Inc.*, 238 F.3d 690, 701 (5th Cir. 2001) (holding
that a party's motion in limine was insufficient to preserve
the issue of admission of evidence for appeal when the
party did not object to the evidence at trial) (citing *Wilson
v. Waggener*, 837 F.2d 220, 222 (5th Cir. 1988)).  Freshub
has pointed to no objection at trial to the use of the filing
dates.  *See* Freshub's Reply Br. at 36 (citing objections only
to Amazon's remarks about Ikan's abandonment of the an-
cestor patent application).  Freshub also has not shown
that, at the pretrial stage, the filing dates could not reason-
ably have been deemed to meet the threshold standard of
relevance under Federal Rule of Evidence 401—*e.g.*, for ar-
guing the inadequacy of the written description and for de-
fending      against      Freshub's      allegations      of      willful

---

[3]  Freshub presents a one-paragraph argument for a
new trial on the ground that the verdict was against the
great weight of the evidence.  Freshub Opening Br. at 47.
The paragraph includes no discussion of evidence.  Nothing
in the paragraph warrants any discussion separate from
the evidentiary discussion *supra* and the discussion in this
section of Freshub's new-trial argument concerning preju-
dicial evidence or statements at trial.

infringement—or, even, the standard of Federal Rule of Evidence 403 focused on comparing probative value against prejudice. The pretrial ruling did not foreclose consideration at trial of whether uses actually being made of the information were running afoul of the evidentiary standards. But the just-cited Fifth Circuit authority indicates that it is broadly up to the litigant seeing prejudice to object in a timely fashion to identify such uses, so they may be evaluated in the context of the unfolding evidence and argument, and prevented or corrected. Freshub, which made no such objection, has not shown an abuse of discretion.

Freshub also briefly argues that Amazon made prejudicial statements at trial by referring to the United States Constitution and making "us versus them" arguments that appeal to "community conscience," necessitating a new trial. Freshub's Opening Br. at 54–58. Freshub's charge that Amazon invoked a foreign-v.-domestic (or other grossly improper) theme was the primary basis for Freshub's new-trial motion in the district court, which rejected the contention because it was unsupported by any concrete examples of the asserted misconduct and (relatedly) Freshub never objected on this ground at trial. *See Post-Trial Opinion*, 576 F. Supp. 3d at 465–67; J.A. 17659–60 (colloquy with Freshub counsel). We see no abuse of discretion in the district court's conclusion on this point. And we draw the same conclusion about Freshub's criticism of some remarks by Amazon's counsel simply about the purpose of the patent system, which we do not read as so distinctly asking the jury to make policy judgments outside its legitimate role (in the face of unchallenged jury instructions) that a new trial is required.

We conclude that the district court did not abuse its discretion in denying a new trial.

## III

In its cross-appeal, Amazon seeks reversal of the district court's rejection of its inequitable-conduct defense.

Specifically, Amazon argues that the district court clearly
erred in its factual findings regarding the statement made
to the PTO in 2017 by Ikan's counsel—who was Ikan's pros-
ecuting attorney from the 2011–12 events at issue through
the 2017 events at issue—in order to obtain revival of the
'291 application, from which the three patents asserted in
this case descend.   We conclude that Amazon has not
shown reversible error.

"To prevail on the defense of inequitable conduct, the
accused infringer must prove that the applicant misrepre-
sented or omitted material information with the specific in-
tent to deceive the PTO." *Therasense*, 649 F.3d at 1287.
The proof must be by clear and convincing evidence. *Id.*
Here, the assertedly false and material statement was the
denial by Ikan's counsel that "Ikan abandoned the '291 ap-
plication intentionally" during the 2012–17 non-response
period.  Amazon's Response Br. at 55.  And for the decep-
tive-intent issue, Amazon focuses entirely on the intent of
Ikan's counsel, which it then attributes to Ikan, rather
than on any intent on Ikan's part separate from that of its
counsel. *Id.* at 58–63. When reviewing an inequitable-con-
duct ruling, we "review the underlying factual determina-
tions of materiality and intent for clear error, and we
review the ultimate decision as to inequitable conduct for
an abuse of discretion." *American Calcar, Inc. v. American
Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011).

Here, the district court applied the proper legal stand-
ards.  The district court found, and it is not disputed, that
the 2017 Ikan statement was material to the PTO's revival
of the application and, hence, to the issuance of the three
patents at issue here.  The district court also found, how-
ever, that Amazon did not prove, by clear and convincing
evidence, that the statement was a misrepresentation
made with the required deceptive intent. *Inequitable Con-
duct Opinion* at 9–12.  We review that finding for clear er-
ror, which we may deem present only if we have a "definite
and firm conviction that a mistake has been committed" by

the district court in finding Amazon's failure of proof. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 855 (1982) (internal quotation marks omitted); *see Blue Gentian, LLC v. Tristar Products, Inc.*, 70 F.4th 1351, 1362–1363 (Fed. Cir. 2023); *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1229 (Fed. Cir. 2007).

It suffices for decision in this matter to focus on the requirement of deceptive intent on counsel's part in making the 2017 statement. We need not explore the standards for when, as a matter of law, counsel's intent is attributable to the client. We cannot disturb the district court's rejection of the inequitable-conduct defense unless we have the definite and firm conviction that the evidence required the district court to find that Amazon proved, clearly and convincingly, that the "single most reasonable inference" from the record, *Therasense*, 649 F.3d at 1290, was that Ikan's counsel, when making his 2017 statement to the PTO, in fact believed that Ikan had intentionally abandoned the '291 application for the 2012–17 period of non-response to the PTO. We do not so conclude.

The subject of the belief at issue in 2017 was Ikan's intent from 2012 through the end of the period of non-response in 2017, so the evidence regarding Ikan's intent for that period is important to the ultimate ruling on the deceptive-intent issue. For various reasons, including the passage of time and the limited testimonial and documentary evidence available—the latter due in part to invocations of attorney-client privilege not challenged on appeal—the record of what actually occurred at relevant times was thin. On that record, the district court found that Amazon did not clearly and convincingly prove Ikan's intentional abandonment. *Inequitable Conduct Opinion* at 9–10. We need not rule on the correctness of that finding. We consider the record for the different but obviously related question of what Ikan's counsel believed in 2017 about whether Ikan intentionally abandoned the '291 application.

16                          FRESHUB, INC. v. AMAZON.COM, INC.

Counsel's statement to the PTO was, in substance, that the abandonment was not intentional on Ikan's part, an assertion that the court could properly understand to have been reaffirmed, and not at all disclaimed, when counsel was examined by Amazon in a deposition for this litigation. *See*, *e.g.*, J.A. 16999–17000. That statement itself can weigh in the evidentiary calculus even when it is not backed up affirmatively with a more granular and concrete account of how the five-year non-response to the PTO occurred—an account that might detail, for example, whether communications from counsel in 2012 failed to reach or inform the relevant decisionmaker at Ikan and whether years of inattention to this particular matter ensued because the attention of the company and counsel was elsewhere. Of course, the absence of such an account, due to unavailability of witnesses or invocations of attorney-client privilege or other reasons, might well lead a factfinder to find false, or even knowingly false, the assertion that the abandonment was unintentional on Ikan's part. But that hardly means that the absence of such an account always compels such a finding.

Amazon's arguments for drawing the necessary adverse inferences leave gaps. Amazon points to deposition testimony from Ikan's counsel that he was aware of the PTO-sent notices in 2011–12, including the January 2012 Notice of Abandonment, and that it was his typical practice to communicate such developments to clients. J.A. 16990, 17000. That testimony need not be taken to establish that the relevant Ikan decisionmaker received and understood the communications and knowingly authorized the abandonment—or that Ikan's counsel knew that the relevant decisionmaker had done so. *See Inequitable Conduct Opinion* at 12 (finding that the Ikan principal "was not included in the 2012 communications between [counsel] and Ikan personnel [other inventors] after the PTO's notice of abandonment"); *id.* at 5 (identifying Ikan principal); J.A. 16994, 16996. Amazon also notes that, in December 2012, the

Ikan principal signed an assignment agreement, prepared by the prosecuting attorney, that lists the '291 application as "Inactive/Abandoned/Expired." J.A. 17070–72. But the '291 application was just one of several patent interests listed in a document merely making a general assignment from one Ikan entity to another, with no apparent decision to be made about the PTO status of the '291 application, and even the triple-alternative category does not declare that application abandoned. Amazon further points to several entries in a privilege log indicating that the prosecuting attorney communicated with Ikan regarding the '291 application immediately after the final office action to which Ikan did not respond.[4] J.A. 16991–92, 17020–21. But those entries do not say that the key Ikan principal received the communications.

The evidence clearly shows that Ikan's counsel knew that the application had been abandoned, as he testified, J.A. 17000. But whether he made his 2017 statement with deceptive intent depends on what he believed about the subject of his statement, namely, the intent behind the abandonment. And as to the latter, he testified that "[t]he intent does not go to my intent. It goes to intent of the applicant." J.A. 16999. The district court could find that counsel genuinely so believed, whether or not the belief was legally correct, and that counsel did not think that *Ikan* had the intent to abandon during the 2012–17 non-response period. *Inequitable Conduct Opinion* at 10–12. That finding was not clearly erroneous, in light of the facts we have already recited. The court could therefore reasonably hold deceptive intent not proven under the governing legal standard.

---

[4] On appeal, Amazon does not challenge the district court's finding that privilege was not waived as to the documents to which those privilege-log entries refer.

Accordingly, we hold that Amazon has not shown reversible error in the district court's rejection of the defense of inequitable conduct.

## IV

We have considered Freshub's and Amazon's other arguments, and we find them unpersuasive. For the foregoing reasons, we affirm the district court's denial of judgment as a matter of law, denial of Freshub's motion for new trial, and grant of judgment on partial findings of no inequitable conduct.

The parties shall bear their own costs.

**AFFIRMED**